Francine SUTTON; Helen Ellis; Gus Swanson, Plaintiffs–Appellees (90–4112), Cross–Appellants (91–3043),

v.

CLEVELAND BOARD of EDUCATION, Frank Huml, Interim Superintendent; Ronald A. Boyd, Former Superintendent; Alfred A. Tutela, Defendants–Appellants (90–4112), Cross–Appellees (91–3043).

Nos. 90–4112, 91–3043.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 16, 1991.

Decided March 19, 1992.

Sanford J. Berger (briefed), Robert M. Fertel (argued and briefed), Berger & Fertel, Cleveland, Ohio, for plaintiffs-appellees cross-appellants.

James G. Wyman (argued and briefed), Thomas C. Simiele, Buckingham, Doolittle & Burroughs, Cleveland, Ohio, for defendants-appellants cross-appellees.

Before: GUY and BOGGS, Circuit Judges; and HARVEY, Senior District Judge.*

RALPH B. GUY, Jr., Circuit Judge.

Plaintiffs, Francine Sutton, Helen Ellis, and Gus Swanson, commenced this action pursuant to 42 U.S.C. § 1983, alleging deprivation of property without due process in violation of the Fourteenth Amendment of the United States Constitution. Plaintiffs claimed that the Cleveland Board of Education (Board) terminated their employment in violation of state law. Plaintiffs also claimed denial of procedural due process on the basis that they were not provided a full evidentiary hearing either prior to or subsequent to their terminations, and denial of substantive due process on the ground that the disciplinary action taken against them arbitrarily and unreasonably deprived them of employment, wages, and other benefits.

Upon cross-motions for summary judgment, the district court held that plaintiffs' grievances were governed by applicable state law and that they were not required to exhaust their union remedies. The district court further held that the Board terminated plaintiffs' employment in violation of state law and granted plaintiffs, who had been reinstated by the Board, damages

for back pay and benefits for the periods of time they were not permitted to work. However, the district court rejected plaintiffs' constitutional due process claims and, therefore, refused to grant their request for compensatory damages and attorney fees.

Defendants argue on appeal that (1) the collective bargaining agreement, not state law, governs plaintiffs' terminations; (2) the grievance and arbitration procedures contained in the agreement provide the exclusive means for challenging those terminations; and (3) those procedures comply with constitutional requirements for due process. Plaintiffs appeal the district court's order dismissing their due process claims and denying them compensatory damages and attorney fees.

For the reasons set forth below, we affirm in part and reverse and remand in part.

I.

The facts are undisputed. As school bus drivers employed by the Board, plaintiffs were "classified civil service employee[s]," Ohio Rev.Code Ann. § 124.11, entitled to retain their positions "during good behavior and efficient service." Ohio Rev.Code Ann. § 124.34.[1] Section 124.34 also sets forth the procedure employers must follow for initiating a discharge and entitles employees to a full administrative hearing and judicial review after discharge.[2] The

---

* Honorable James Harvey, United States District Court for the Eastern District of Michigan, sitting by designation.

1. The relevant portion of section 124.34 provides that no classified civil servant may be removed except "for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of such sections or the rules of the director of administrative services or the commission, or any other failure of good behavior, or any other acts of misfeasance, malfeasance, or nonfeasance in office."

2. The pertinent part of Ohio Rev.Code Ann. § 124.34 reads:

In any case of reduction, suspension of more than three working days, or removal, the appointing authority shall furnish such

employee with a copy of the order of reduction, suspension, or removal, which order shall state the reasons therefor. Such order shall be filed with the director of administrative services and state personnel board of review, or the commission, as may be appropriate.

Within ten days following the filing of such order, the employee may file an appeal, in writing, with the state personnel board of review or the commission. In the event such an appeal is filed, the board or commission shall forthwith notify the appointing authority and shall hear, or appoint a trial board to hear, such appeal within thirty days from and after its filing with the board or commission, and it may affirm, disaffirm, or modify the judgment of the appointing authority.

In cases of removal or reduction in pay for disciplinary reasons, either the appointing au-

Board does not dispute that it did not follow the procedure set forth in section 124.34 when terminating plaintiffs.

As members of the International Brotherhood of Teamsters, Truck Driver's Union, Local 407 (Union), plaintiffs' employment was also covered by a collective bargaining agreement negotiated between the Union and the Board. Article VI of the agreement (Management Rights) provides that the Board has the right to "[s]uspend, discipline, demote, or discharge for just cause, or lay off, transfer, assign, schedule, promote or retain employees." Article XIII (Discipline), provides in pertinent part:

> For reasons including, but not limited to, intoxication, narcotics, criminal offenses, license suspensions, attendance, tardiness, absence without leave, neglect of duty, dishonesty, or accidents, an employee may be disciplined up to and including termination.

Article XII of the agreement establishes a four-step grievance procedure wherein "grievance" is defined as "any matter concerning the interpretation, application or violation of this Agreement, between the Board and the Union." Step three of the grievance procedure provides:

> After Steps 1 and 2 of this Section have been exhausted, such disputes shall be submitted to a grievance panel. This panel shall consist of three (3) representatives of the Board and three (3) officers of the Union. This panel will meet not less than once each month at a mutually agreeable time and place and such grievances shall be submitted in writing and shall be heard in accordance with the rules established by this panel. A decision rendered by the panel shall be final and binding. In the event the panel is equally divided in their opinion and there exists a deadlock as to the finding in the matter, the Union shall have the sole and

exclusive right, within thirty (30) days, to submit the matter to arbitration.

The fourth and final step of the grievance procedure is arbitration designed to resolve any controversy left unresolved due to a split panel at step three in the process, and provides that "[t]he decision and award of the arbitrator shall be final and binding upon the Board, the Union, and the employees affected by the decision and award."

When plaintiffs first applied to the Board for employment, they noted on their applications that they were convicted felons or had felony charges pending against them.[3] Nevertheless, the Board offered them employment, which they accepted. In August 1985, the Board's Chief of Transportation, M. Bob Hamed, became aware of plaintiffs' criminal records. As a consequence, the Board placed each plaintiff on administrative leave and pre-termination hearings were scheduled. Subsequent to these hearings, at which plaintiffs were represented by the Union, plaintiffs were placed on "involuntary administrative leave" for the 1985–86 school year and told they would be reinstated if and when their criminal records were expunged.

The Union then filed a class grievance on behalf of plaintiffs and other similarly situated employees, and the grievance proceeded through steps one and two of the procedure established by the collective bargaining agreement. At step three in the process, the six-member panel never rendered a decision on the merits of plaintiffs' grievance. Rather, the panel deliberation ended when a settlement was reached, resulting in the reinstatement of some of the affected employees.

The settlement, set forth in a December 1985 letter signed by representatives of both the Board and the Union, states that the Union and the Board "agree to reinstate, with no back pay, those drivers who

thority or the officer or employee may appeal from the decision of the state personnel board of review or the commission to the court of common pleas of the county in which the employee resides in accordance with the procedure provided by section 119.12 of the Revised Code.

**3.** The record indicates that plaintiffs Sutton and Swanson had felony convictions prior to making application for employment, whereas Ellis was convicted of a felony after she commenced her employment. In their complaint, Sutton and Swanson state that their felony convictions occurred more than two years prior to the termination of their employment.

were placed on administrative leave and who did not falsify their employment applications." The letter further states that all reinstated bus drivers must attempt to have their felony convictions expunged when it becomes possible to do so. The letter contains two lists of employees, those to be reinstated and those not to be reinstated. The letter lists plaintiff Helen Ellis among those drivers to be reinstated, but Sutton and Swanson do not appear on either list. Although the letter is silent on the matter, the parties represent to the court that the Board and Union also agreed that any employees dissatisfied with the terms of the settlement would not be bound by it and that the Union retained the right to proceed to arbitration on behalf of any employees not consenting to the settlement.

Plaintiffs did not agree to the settlement but were, nevertheless, reinstated. Plaintiff Ellis was reinstated in November 1985, after having her felony conviction expunged, and plaintiffs Sutton and Swanson were reinstated sometime in January 1986 without expungement of their criminal records. Although the Board and Union initiated the process for having an arbitrator decide the merits of plaintiffs' grievances, plaintiffs' counsel notified both the Board and the Union that plaintiffs did not consent to the arbitration.

Plaintiffs thereafter filed the instant action under 42 U.S.C. § 1983, challenging the validity of their discharges on both procedural and substantive grounds. Plaintiffs claimed that "involuntary admin-istrative leave" is not a valid means for suspension of Ohio public employees and that, because the Board failed to follow procedures for termination of public employees pursuant to Ohio Revised Code § 124.34, plaintiffs were denied meaningful use of established state adjudicatory procedures.[4]

The Board moved for summary judgment on the basis that plaintiffs' exclusive remedy for grievances were the grievance and arbitration procedures outlined in the collective bargaining agreement, that those procedures satisfy the requirements of the due process clause, and that plaintiffs' failure to exhaust that remedy precludes them from seeking redress in court. Arguing that a bargained for agreement that defines the terms and conditions of employment should control all labor disputes between union employees and a public employer, defendant relied upon Chapter 4117 of the Ohio Revised Code, which states in pertinent part:

(A) All matters pertaining to wages, hours, or terms and other conditions of employment and the continuation, modification, or deletion of an existing provision of a collective bargaining agreement are subject to collective bargaining between the public employer and the exclusive representative....

. . . .

(C) Unless a public employer agrees otherwise in a collective bargaining agreement, nothing in Chapter 4117. of

---

4. Plaintiffs argued, and the district court subsequently agreed, that Ohio law does not recognize "involuntary administrative leave." Employers may grant an employee an "administrative leave," but only upon the request of the employee. *See* Ohio Admin.Code § 123:1–34–01. Because plaintiffs' terminations were not voluntary, *they* were *not administrative leaves.* Nor can plaintiffs' terminations be considered "layoffs" pursuant to Ohio Revised Code section 124.321, as there was no reduction in force for lack of funds, lack of work, or deletion of positions. Therefore, argued plaintiffs, the Board's actions can only be characterized as "suspensions" or "removals," entitling plaintiffs to review before the state civil service commission or state personnel board, and thereafter, the Ohio courts. *See* Ohio Rev.Code Ann. § 124.34.

Plaintiffs maintained that, because the Board did not order the disciplinary actions according to section 124.34 or the administrative regulations accompanying that section, plaintiffs were denied the administrative and judicial review required by that section.

In addition, plaintiffs argued that the disciplinary actions against Sutton and Swanson could not be validly predicated upon their prior felony convictions, because those convictions had occurred more than two years prior to their "administrative leaves." *See* Ohio Admin.Code § 124–3–04. Defendant did not address these arguments before the district court, but simply relied on the argument that the entire controversy regarding the validity of the "leaves" was subject to binding arbitration.

the Revised Code impairs the right and responsibility of each public employer to:

.... .

(5) Suspend, discipline, demote, or discharge for just cause, or lay off, transfer, assign, schedule, promote, or retain employees....

Ohio Rev.Code § 4117.08. Section 4117.10 of the Code provides:

(A) An Agreement between a public employer and an exclusive representative entered into pursuant to Chapter 4117. of the Revised Code governs the wages, hours, and terms and conditions of public employment covered by the agreement. *If the agreement provides for final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure and the state personnel board of review or civil service commissions have no jurisdiction to receive and determine any appeals relating to matters that were the subject of a final and binding grievance procedure.* Where no agreement exists or where an agreement makes no specification about a matter, the public employer and the public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees.

(Emphasis added). The Board argued that plaintiffs could not assert a cause of action under 42 U.S.C. § 1983 for denial of due process without pleading and proving the inadequacy of state remedies.

In response to defendants' motion for summary judgment, the district court initially ruled that the plaintiffs' suspensions were matters governed by the collective bargaining agreement:

The plain language of the agreement covers all matters relating to the interpretation, application or violation of the contract. Whether plaintiffs could be disciplined as they were, and whether the reasons for the discipline constitute just cause are matters relating to the interpretation and violation of the agreement. They are therefore subject to binding arbitration. [Article XIII] specifically calls for a hearing before discipline is meted out. Plaintiffs' claim for a meaningful hearing, then, [is] covered by the agreement, even if they base their claim on state law.

The district court further held that by enacting section 4117.10 the Ohio legislature withdrew the protections of section 124.34 from employees covered by bargaining agreements that provide for binding arbitration. However, upon examining step three in the four-step grievance procedure provided by the agreement, the district court found that the agreement's provision for arbitration was defective, as it did not provide for final and binding arbitration in all instances:

It is only when and if the panel is equally divided that a grievance is submitted to final and binding arbitration. The employee has no right to submit his grievance to binding arbitration in the face of an adverse decision by the panel. The Court concludes that this process does not constitute final and binding arbitration within the meaning of § 4117.10.

....

In the present collective bargaining agreement, the review panel can be analogized to the civil service commission—a neutral body still within the system. But under state law an aggrieved individual has a right to review by an impartial person—a judge. The counterpart in the agreement is an arbitrator, except that review by him is not assured. It is only when the panel cannot reach a decision that binding arbitration is used. Because the agreement provides for arbitration only in a few instances, the Court holds that it does not satisfy the requirements of § 4117.10. Thus, the state laws relating to discipline, specifically § 124.34, are not replaced by the collective bargaining agreement.

Accordingly, the district court held that the Board was subject to review under applicable state laws and that section 124.34 provided plaintiffs with rights and protections that could be vindicated without going through the grievance procedure.

In response to the argument that plaintiffs had failed to exhaust or prove the inadequacy of state remedies, the court found that, "[b]y not following the procedures laid out in § 124.34, the Board itself made it impossible for plaintiffs to appeal their suspensions to the civil service commission or the state personnel board of review, and these boards in fact refused to hear an appeal." Noting that plaintiffs had unsuccessfully petitioned the Ohio Supreme Court for a writ of mandamus compelling the board or commission to hear plaintiffs' appeals, the district court held that plaintiffs had done all that they could do to exhaust their administrative and judicial remedies on the state level.[5] Accordingly, the district court entered an order denying defendants' motion for summary judgment.

Thereafter, the Board moved for reconsideration, and plaintiffs filed a motion for summary judgment. In response, the district court (1) held that plaintiffs' pre-termination hearings comported with constitutional standards for due process; (2) affirmed its prior ruling that the collective bargaining agreement's post-termination grievance procedure was facially defective and that plaintiffs need not follow it; and (3) held that the Board violated state law and breached the collective bargaining agreement by terminating plaintiffs' employment without complying with section 124.34. Accordingly, the district court denied plaintiffs' summary judgment as to their due process claim and granted summary judgment on their "breach of contract claim."

The district court subsequently awarded plaintiffs back pay and benefits for the periods of time they were not permitted to work, but denied plaintiffs' request for compensatory damages under 42 U.S.C. § 1983 and attorney fees under 42 U.S.C. § 1988, on the basis that plaintiffs had not prevailed on their constitutional due process claims.

Plaintiffs then filed a motion to alter or amend the district court judgment, pursuant to Federal Rule of Civil Procedure 59(e). Plaintiffs argued that the court had only decided the pre-deprivation aspect of their due process claim, and had failed to address either the post-deprivation aspect of their procedural due process claim or their substantive due process claim. Plaintiffs further argued that the district court's findings—that the agreement's post-termination grievance procedure was facially defective and that the Board's failure to follow section 124.34 procedures denied plaintiffs their administrative remedies—were tantamount to a finding that plaintiffs were denied their post-deprivation due process. The district court denied plaintiffs' Rule 59(e) motion.

## II.

We first address the district court's holding that plaintiffs' employment relationship with the Board was subject to review under state law and that section 124.34 provided plaintiffs with rights and protections that could be vindicated without going through the grievance procedure. Our review is *de novo* because this holding involved a determination of law. *Salve Regina College v. Russell,* —— U.S. ——, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991); *Whitney v. Brown,* 882 F.2d 1068, 1071 (6th Cir.1989).

We conclude, as the district court did, that because the collective bargaining agreement failed to meet the requirements of section 4117.10, the agreement did not supersede applicable state law and the grievance and arbitration procedures in the agreement were not plaintiffs' exclusive means of redress. The plain language of the statute indicates that the grievance procedures of a collective bargaining agreement supersede the statutory administra-

---

5. Although the district court found that plaintiffs pursued their grievances to the civil service commission and the state personnel board of review, these appeals are not otherwise indicated by the record, and no reason is provided as to why these panels refused to hear plaintiffs'
claims. Further, although plaintiffs assert that they filed petitions for writs of mandamus with the Ohio Supreme Court, the plaintiffs do not explain why that court dismissed those petitions.

tive and judicial review "[i]f the agreement provides for final and binding arbitration of grievances." Defendant does not dispute the district court finding that the grievance procedures at issue do not provide for binding and final arbitration in all instances. Indeed, under step three of the grievance procedure, if the panel votes against the employees, or if it takes no vote at all, employees are not entitled to final and binding arbitration.

■■■ Defendant responds to this fact by arguing that, *in this case*, the Board and the Union agreed that the Union could proceed to arbitration on behalf of plaintiffs, even though the predicate for proceeding to arbitration under the agreement—an equally divided vote of the panel—never occurred. Defendant would have us find that the requirement expressed in step three for proceeding to arbitration is irrelevant, so that we could find that the collective bargaining agreement imposes on the parties an unexpressed duty to arbitrate. In essence, defendant asks us to rewrite the collective bargaining agreement. Not only would this violate the rule that arbitrability must be determined on the basis of the contract entered into by the parties, *Local 390 v. Kroger Co.*, 927 F.2d 275, 279 (6th Cir.1991), but also the exclusivity of the grievance procedures and the application of state remedies would turn on the unpredictable ad hoc agreements that could vary with every grievance. We do not believe that these ad hoc agreements are the type of "agreement" contemplated by the Ohio legislature in section 4117.10(A). If the Union and the Board wish to avoid an employment relationship governed by a dual system of rules, terms, and conditions, then they can agree to provide employees the right to final and binding arbitration of grievances under Ohio law.[6]

We find unpersuasive defendants' reliance upon this circuit's unpublished decision in *White v. Cleveland Board of Education*, No. 87–4019 (6th Cir. Nov. 3, 1988) [861 F.2d 722 (table)]. In *White*, a case involving the same grievance procedures at issue here, this court faced the argument that state laws controlling discipline applied because the grievance procedures provided for arbitration in only a few situations. Citing the district court judgment in *Sutton* that is now before us, we distinguished *White* from *Sutton* because the grievance panel in *White* was equally divided at step three of the procedure, thereby entitling plaintiffs to submit their grievance to an arbitrator. *Id.*, slip op. at 6–7 [861 F.2d 722 (table)]. Consequently, *under the terms of the collective bargaining agreement*, the plaintiffs in *White* were entitled to proceed to final and binding arbitration, and we held that the plaintiffs there could not avail themselves of state civil service remedies. We declined to expressly adopt or overrule the holding of the district court in *Sutton* on the basis that it was not applicable to the circumstances presented in *White*. Therefore, *White* is not dispositive because we did not squarely face the question presented here.[7]

■■■ Our holding affirming the district court comports with the strict construction accorded section 4117.10(A) by Ohio courts. The Supreme Court of Ohio has recognized that section 4117.10(A) "was designed to free public employees from *conflicting* laws which may act to interfere with the newly established right to collectively bargain." *State, ex rel. Dispatch Printing Co. v. Wells*, 18 Ohio St.3d 382, 384, 481

---

6. We recognize that, even when a collective bargaining agreement provides for final and binding arbitration, the union can still elect not to proceed to the final step of the grievance process if the decision to do so is consistent with its duty of fair representation. This judicial gloss is so firmly established in labor law that we believe any interpretation of the Ohio statute must be read against that backdrop. *See, e.g., Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

7. It would be disingenuous not to acknowledge that a rationale could be constructed in which we do here what we did in *White, i.e.*, evade the question presented when the grievance panel decision is not equally divided. Since it is clear now that this issue of interpretation is capable of arising again, it is best to reach a conclusion that will not leave the outcome to turn on any number of factors that might differ in each case, thus providing little guidance for the future.

N.E.2d 632, 634 (1985). If the collective bargaining agreement fails to *specifically* take away protections and benefits provided by Ohio law, employees retain their entitlement to them. *State, ex rel. Clark v. Greater Cleveland Regional Transit Auth.,* 48 Ohio St.3d 19, 23, 548 N.E.2d 940, 943 (1990).

■ Although the parties cite no Ohio cases construing the language at issue here ("If the agreement provides for a final and binding arbitration"), cases construing other language in section 4117.10(A) ("where an agreement makes no specification about a matter") have interpreted the language in a manner that places upon the parties to a collective bargaining agreement the burden of clearly indicating an intent to preclude the application of the protections and benefits of civil service statutes. The Ohio Supreme Court has held that the collective bargaining agreement must "specifically address the matter" at issue and that there must be a "clear conflict" between the contract and the relevant statutory provision for the court to conclude that the parties to the agreement intended it to encompass the issue in controversy and eliminate application of state and local law. *Id.,* 48 Ohio St.3d 19, 22–24, 548 N.E.2d 940, 943–44; *Bashford v. City of Portsmouth,* 52 Ohio St.3d 195, 200–01, 556 N.E.2d 477, 482 (1990). The mere listing in an agreement of a subject recognized by Ohio law is not enough under section 4117.10(A) to exclude the matter from applicable state law. *See State, ex rel. Bardo v. Lyndhurst,* 37 Ohio St.3d 106, 113, 524 N.E.2d 447, 454 (1988) ("Since the agreement *contains no detailed discussion of these matters,* we believe that the intent of the agreement is that existing procedures and policies as to those matters will remain intact and unaltered." (Emphasis supplied)).

Finally, we reject defendants' argument that plaintiffs were required to exhaust the grievance and arbitration procedures contained in the collective bargaining agreement before pursuing their administrative or judicial remedies. Defendants cite *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965), which states:

> As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress.

(Emphasis in original). First, our response is that, under the express terms of step three in the grievance procedure, plaintiffs pursued the process as far as the agreement required or allowed. Second, as is evident from the quoted passage, the rule applies in cases governed by federal labor law, not state law.

■ Plaintiffs assert that their discharge violated section 124.34 because they were not discharged for a reason listed in that section and because they were denied the process guaranteed them by that section. Further, the apparent reason for plaintiffs' discharges—their prior felony convictions—raises the question whether the discharge of plaintiffs Sutton and Swanson violated section 124–3–04 of the Ohio Administrative Code, which governs discipline based upon a criminal conviction. Thus, because plaintiffs are asserting statutory rights that are independent of their contractual rights and are beyond the scope of the arbitrators' general authority, plaintiffs may assert those statutory rights independent of the arbitration process.[8] *McDonald v. West Branch,* 466 U.S. 284, 288–92, 104 S.Ct. 1799, 1802–04, 80 L.Ed.2d 302 (1984) (employee's use of arbitration procedures did not bar subsequent action under 42 U.S.C. § 1983); *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 52–55, 94 S.Ct. 1011, 1021–23, 39 L.Ed.2d 147 (1974) (contractual rights and statutory rights under Title VII "have legally independent origins"); *Youghiogheny & Ohio*

---

8. Further, because the resolution of plaintiffs' state law claim is not substantially dependent upon analysis of the terms of the collective bargaining agreement, we are not required to treat it as a section 301 claim or dismiss it as preempted by federal labor law. *See Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985).

*Coal Co. v. Oszust,* 23 Ohio St.3d 39, 41, 491 N.E.2d 298, 299 (1986). *But cf. Hammontree v. NLRB,* 925 F.2d 1486, 1496–98 (D.C.Cir.1991) (*en banc* ) (stating that even though arbitration award does not preclude subsequent statutory claim, a claim arising under both the National Labor Relations Act and a collective bargaining agreement are not independent; therefore, exhaustion of arbitration remedies is required prior to asserting statutory claim).

Accordingly, we affirm the district court's holding that the Board was subject to all applicable state laws and that section 124.34 provided plaintiffs with rights and protections that need not be pursued via the grievance procedures of their collective bargaining contract in order to be vindicated.

### III.

■ We now turn to that portion of the district court order denying summary judgment to plaintiffs on their due process claim and granting them summary judgment on their breach of contract claim. Since the district court's judgment on the contract claim is based upon the finding that plaintiffs were discharged without the process guaranteed by section 124.34, the court never decided the question whether plaintiffs were discharged for cause or the question whether the discharge of plaintiffs Sutton and Swanson violated section 124–3–04 of the Ohio Administrative Code. We believe that this finding addresses the issue of due process and does not support a judgment that plaintiffs suffered a breach of contract. We therefore reverse the district court's judgment granting plaintiffs relief for breach of contract.[9] For the reasons that follow, we also reverse the district court's judgment denying plaintiffs relief on their procedural due process claim, and remand plaintiffs' procedural due process claim for further consideration consistent with this opinion.

Section 1983 authorizes "any citizen of the United States or other person within the jurisdiction thereof" to pursue "an action at law [or] a suit in equity" against "[e]very person who, under color of" state law, causes "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]" *See* 42 U.S.C. § 1983. Although "§ 1983 by itself does not protect anyone against anything[,]" *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 617, 99 S.Ct. 1905, 1916, 60 L.Ed.2d 508 (1979), the statute "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States...." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 924, 102 S.Ct. 2744, 2747, 73 L.Ed.2d 482 (1982). Here, plaintiffs rely on the Fourteenth Amendment, which forbids state actors to "deprive any person of life, liberty, or property, without due process of law[.]" *See* U.S. Const. amend. XIV, § 1.

Although property interests are not created by the Constitution but are created and defined by "existing rules or understandings that stem from an independent source such as state law," *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the Supreme Court has held repeatedly that the property interest in a person's means of livelihood is one of the most significant that an individual can possess. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 543, 105 S.Ct. 1487, 1494, 84 L.Ed.2d 494 (1985). Indeed, when examining the same Ohio statute at issue in the instant case, particularly sections 124.11 and 124.34 of the Ohio Revised Code, the Court

---

**9.** The district court stated that plaintiffs' suspensions, labeled as "administrative leaves," contravened "the explicit provisions of both the Agreement and the statute." Yet, plaintiffs have consistently maintained that their claims have never involved the application or violation of the collective bargaining agreement but only arise under state statutory and administrative law and federal constitutional law. Plaintiffs' complaint asserts no claim for breach of contract under state law or the collective bargaining agreement; instead, it alleges a violation of state law pertaining to the cause and procedure for disciplinary actions necessary to establish plaintiffs' claim that they were deprived of a property interest without due process. If a breach of the collective bargaining agreement was claimed, plaintiffs could not sue their employer without first establishing that the Union breached its duty of fair representation.

held in *Loudermill* that Ohio's classified civil servants possessed property interests in continued employment not subject to state deprivation except pursuant to constitutionally adequate procedures. *Loudermill,* 470 U.S. at 538, 105 S.Ct. at 1491; *see also Lee v. Western Reserve Psychiatric Habilitation Ctr.,* 747 F.2d 1062, 1067 (6th Cir.1984).

Once it is determined that the due process clause applies, we are then faced with the question of what process is due, *id.,* 470 U.S. at 541, 105 S.Ct. at 1492, and, particularly, whether a federal cause of action is the appropriate remedy for plaintiffs' deprivation. *Ramsey v. Board of Educ. of Whitley County,* 844 F.2d 1268, 1272 (6th Cir.1988). In *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Supreme Court held that in order to state a claim for relief in federal court under section 1983 a plaintiff must show that available state procedures were inadequate to compensate for the deprivation of property. Under the authority of *Parratt,* this court held that, in a procedural due process case under section 1983, "the plaintiff must attack the state's corrective procedure as well as the substantive wrong" and carries the burden of pleading and proving the inadequacy of state processes. *Vicory v. Walton,* 721 F.2d 1062, 1066 (6th Cir.1983), *cert. denied,* 469 U.S. 834, 105 S.Ct. 125, 83 L.Ed.2d 67 (1984).

Plaintiffs do not challenge the district court's conclusion that their pre-termination hearings comported with the due process requirements of "notice and an opportunity to respond." *See Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495. However, the due process standards enunciated for pre-termination hearings in *Loudermill* were based in part on the scope of the post-termination process provided by section 124.34, which entitles Ohio civil servants to a full administrative hearing and judicial review when discharged for disciplinary reasons. *Id.* at 547–48, 105 S.Ct. at 1496. "[I]t is clear that the required extent of post-termination procedures is inextricably intertwined with the scope of pre-termi-

nation procedures." *Carter v. Western Reserve Psychiatric Habilitation,* 767 F.2d 270, 273 (6th Cir.1985). Consequently, plaintiffs argue that, even though they may have received a pre-termination opportunity to respond, the district court's factual findings that plaintiffs were denied their administrative and judicial remedies due to the Board's failure to comply with section 124.34 support the conclusion that there had been a denial of post-suspension due process. Although these post-termination procedures, when coupled with a pre-termination opportunity to respond, have been held to provide all the process that is due, *Loudermill,* 470 U.S. at 547–48, 105 S.Ct. at 1496, this does not mean "that abuses in individual cases under § 124.34 may not occur." *Loudermill v. Cleveland Bd. of Educ.,* 721 F.2d 550, 564 (6th Cir.1983), *aff'd,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

Although the plaintiffs do not contend that the state's corrective procedure is *per se* deficient, they do allege, and defendant does not dispute, that plaintiffs were denied the opportunity to pursue their state remedies due to defendants' failure to comply with Ohio statutory provisions governing the disciplinary discharge of government employees. While the record does not indicate the extent to which plaintiffs followed the procedures established under sections 124.34 and 119.12 for appealing terminations, defendant does not dispute plaintiffs' allegation that they were precluded from obtaining the review guaranteed by that law because defendant denominated their discharges as "involuntary administrative leaves" and otherwise did not comply with the discharge procedure of section 124.34. Further, defendant does not challenge on appeal the district court finding that, "[b]y not following the procedures laid out in § 124.34, the Board itself made it impossible for plaintiffs to appeal their suspensions to the civil service commission or the state personnel board of review."

■ While the reasons underlying the refusal by the civil service commission and the state personnel board to address plain-

tiffs' appeals are not apparent, it is apparent that the disposition of plaintiffs' claims did not occur at a post-termination hearing on the merits. When state remedies for redress have been denied, the remedies cannot be said to be adequate. The Due Process Clause of the Fourteenth Amendment prevents states from "denying potential litigants use of established adjudicatory procedures, when such an action would be 'the equivalent of denying them an opportunity to be heard upon their claimed right[s].'" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429–30, 102 S.Ct. 1148, 1154–55, 71 L.Ed.2d 265 (1982) (*quoting Boddie v. Connecticut*, 401 U.S. 371, 380, 91 S.Ct. 780, 787, 28 L.Ed.2d 113 (1971)).

> Where, as here, a court has approved an abbreviated pre-termination hearing, due process requires that a discharged employee's post-termination hearing be substantially more "meaningful". At a minimum, this requires that the discharged employee be permitted to attend the hearing, to have the assistance of counsel, to call witnesses and produce evidence on his own behalf, and to know and have an opportunity to challenge the evidence against him. The severity of depriving a person of the means of livelihood requires that such person have at least one opportunity for such a full hearing, so that he may challenge the factual basis for the state's action and may provide reasons why that action should not be taken.

*Carter*, 767 F.2d at 273 (citations omitted).

Therefore, plaintiffs are entitled to the administrative and judicial review guaranteed them by Ohio civil service law and the Fourteenth Amendment to the United States Constitution. Because the adjudication process denied to plaintiffs comports with the constitutional requirements for due process, because the state of the record in this case does not allow us to determine the substantive merits of plaintiffs' suspensions, and because the reasons

for discharge concern matters of state law that can be adequately addressed by state bodies, we remand this matter for resolution pursuant to the remedies provided by section 124.34. The district court is therefore instructed to enter an order requiring the Board to comply with the requirements of section 124.34 and any other civil service law applicable to employment termination that is necessary to allow plaintiffs to pursue their administrative and judicial remedies.[10]

## IV.

▆ Plaintiffs argue that the "unlawful, unreasonable and arbitrary suspensions by the Board," deprived them of their substantive due process right to employment. We have recognized that the Fourteenth Amendment has a substantive due process component that "protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action." *Gutzwiller v. Fenik*, 860 F.2d 1317, 1328 (6th Cir.1988). Nevertheless, we conclude that plaintiffs' state-created right to tenured employment lacks substantive due process protection.

Although this court has not specifically addressed the question whether an interest in tenured employment rises to the level of a "fundamental" interest protected by substantive due process, we have recently addressed the scope of substantive due process when answering the question whether a public employee could assert a substantive due process right to promotion.

> We conclude that no such right exists. Most, if not all, state-created contract rights, while assuredly protected by procedural due process, are not protected by substantive due process. The substantive Due Process Clause is not concerned with the garden variety issues of common law contract. Its concerns are far narrower, but at the same time, far more important. Substantive due process "af-

---

10. In the event that, for reasons not apparent in this record, it is now impossible as a matter of law for plaintiffs to pursue their state remedies,

the district judge is instructed to fashion an appropriate remedy and afford relief consistent with a finding of a due process violation.

fords only those protections 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " It protects those interests, some yet to be enumerated, "implicit in the concept of ordered liberty," like personal choice in matters of marriage and the family.

State-created rights such as [plaintiff's] contractual right to promotion do not rise to the level of "fundamental" interest protected by substantive due process. Routine state-created contractual rights are not ... so vital that "neither liberty nor justice would exist if [they] were sacrificed."

*Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir.1990) (citations omitted).

Although *Baesler* did not conclude that all state-created contract rights lack substantive due process protection, and specifically left unanswered the question whether substantive due process may protect a contract right to keep a tenured job, *id.* at 1355 (citing *Ramsey*, 844 F.2d at 1274–75, and *Harrah Indep. Sch. Dist. v. Martin,* 440 U.S. 194, 197–98, 99 S.Ct. 1062, 1063–64, 59 L.Ed.2d 248 (1979)), we are persuaded by the reasoning of *Baesler* that plaintiffs' statutory right to be discharged only for cause is not a fundamental interest protected by substantive due process.

Here, as in *Baesler*, we find persuasive Justice Powell's concurrence in *Regents of University of Michigan v. Ewing*, 474 U.S. 214, 229, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985):

Even if one assumes the existence of a property right, however, not every such right is entitled to the protection of substantive due process. While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, *Board of Regents v. Roth*, 408 U.S. 564, 577 [92 S.Ct. 2701, 2709, 33 L.Ed.2d 548] (1972), substantive due process rights are created only by the Constitution.

Absent the infringement of some "fundamental" right, it would appear that the termination of public employment does not constitute a denial of substantive due process. *See McMaster v. Cabinet For Human Resources*, 824 F.2d 518, 523 (6th Cir.1987) (Nelson, J. concurring). Since the legal basis relied upon for plaintiffs' terminations is not clearly developed in the record, and since plaintiffs may have adequate state remedy on remand that will compensate them for any interference with their right to tenured employment, *see Baesler*, 910 F.2d at 1355, we conclude that plaintiffs do not have a cognizable substantive due process claim. *But cf. Moore v. Warwick Pub. Sch. Dist. No. 29,* 794 F.2d 322, 329 (8th Cir.1986) (recognizing a substantive due process right to be free from arbitrary and capricious state action resulting in employment termination). Insofar as the district court judgment can be read as dismissing plaintiffs' substantive due process claim, that judgment is affirmed.

## V.

In addition to an award for loss of back pay and benefits, plaintiffs sought compensation for mental anguish, humiliation, and emotional distress allegedly caused by their employment terminations. Plaintiffs also requested attorney fees pursuant to 42 U.S.C. § 1988, which reads as follows:

In any action or proceeding to enforce a provision of sections ... 1983, 1985, and 1986 of this title ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

The district court denied compensatory damages and attorney fees on the basis that plaintiffs had not prevailed on their constitutional due process claim. Plaintiffs appeal the denial of compensatory damages and attorney fees.

Because we find that the district court erred by granting judgment in favor of defendant on plaintiffs' procedural due process claim and remand this case for entry of an order requiring defendant to provide plaintiffs with the process they were unlawfully denied, the district court's

basis for denying compensatory damages and attorney fees is no longer sound. Therefore, we must determine whether plaintiffs are prevailing parties entitled to attorney fees. In addition, we must determine whether plaintiffs are entitled to compensation for injuries caused by the denial of procedural due process.

■■■ Although mental and emotional distress caused by the denial of procedural due process may be compensable under section 1983, damages should not be presumed to flow from every deprivation of due process. *Carey v. Piphus*, 435 U.S. 247, 262–63, 98 S.Ct. 1042, 1051–52, 55 L.Ed.2d 252 (1978). Moreover, where a deprivation is justified but the procedures are deficient, the distress a person feels may be attributable to the justified deprivation rather than to deficiencies in procedure. *Id.* at 263, 98 S.Ct. at 1052. Consequently, a plaintiff is required "to convince the trier of fact that he actually suffered distress because of the denial of procedural due process itself." *Id.* However, the disposition below did not require the district court to decide the issue of damages. Further, because the presentation of evidence showing damages was delayed pending the district court's decision on the merits of plaintiffs' due process claim, the record has not been sufficiently developed to support a finding that plaintiffs' mental and emotional distress actually was caused by the denial of due process itself. Because of the posture of the litigation on this issue, we find it necessary to remand the question whether plaintiffs' alleged injuries are compensable.

■■■ Nevertheless, "[e]ven if [plaintiffs'] suspensions were justified, and even if they did not suffer any other actual injury, the fact remains that they were deprived of their right to procedural due process." *Id.* at 266, 98 S.Ct. at 1053. The denial of procedural due process is actionable for nominal damages without proof of actual injury. *Id.* Therefore, if on remand the district court determines that the state adjudicatory procedures establish that plaintiffs' discharges were justified, plain-

tiffs will nevertheless be entitled to recover nominal damages.

■■■ Under section 1988, prevailing parties in civil litigation brought pursuant to certain civil rights legislation may recover reasonable attorney fees. The Supreme Court recently defined the test to be applied for determining whether a civil rights plaintiff is entitled to a recovery of attorney fees:

If the plaintiff has succeeded on "any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit," the plaintiff has crossed the threshold to a fee award of some kind. The floor in this regard is provided by our decision in *Hewitt v. Helms*, 482 U.S. 755 [107 S.Ct. 2672, 96 L.Ed.2d 654] (1987). As we noted there, "[r]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." Thus, at a minimum, to be considered a prevailing party within the meaning of § 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant. Beyond this absolute limitation, a technical victory may be so insignificant, and may be so near the situations addressed in *Hewitt* and *Rhodes* [*v. Stewart*, 488 U.S. 1, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988)], as to be insufficient to support prevailing party status.... Where the plaintiff's success on a legal claim can be characterized as purely technical or *de minimis*, a district court would be justified in concluding that even the "generous formulation" we adopt today has not been satisfied. The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute.

*Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–93, 109 S.Ct. 1486, 1492–93, 103 L.Ed.2d 866 (1989) (citations omitted).

We conclude that plaintiffs are entitled to an award of attorney fees under section

1988. Although plaintiffs have not yet prevailed on the merits of their substantive assertion (that they were discharged without cause in violation of state civil service employment law), they have established that they were terminated from employment without procedural due process, and the Board will now be required to permit plaintiffs the right to proceed with their statutory post-deprivation remedies. They have thus prevailed upon a claim which established a right "secured by the constitution." 42 U.S.C. § 1983. By its express terms, section 1988 authorizes an award to the prevailing party "[i]n any action ... to enforce a provision" of section 1983.

The case is remanded for a determination of the appropriate amount of attorney fees.

## VI.

In summary, we AFFIRM the judgment that the Board was subject to all applicable state laws and that section 124.34 provided plaintiffs with rights and protections that need not be pursued through the grievance procedure in order to be vindicated. We REVERSE the district court's finding of a breach of contract and VACATE the judgment awarding plaintiffs back pay and benefits. We REVERSE the district court's denial of relief on plaintiffs' procedural due process claim, and REMAND plaintiffs' due process claim for entry of an order requiring the Board to comply with the section 124.34 process so that plaintiffs may receive post-termination review of their discharges. The district court's denial of relief on plaintiffs' substantive due process claim is AFFIRMED. Finally, we REMAND for further consideration consistent with this opinion the issues of compensatory damages and attorney fees.

AFFIRMED in part; REVERSED and REMANDED in part.

BOGGS, Circuit Judge, concurring in part and dissenting in part.

I agree with much of what is said in the court's opinion, but I believe that the court has made a fundamental error in interpreting Ohio Revised Code § 4117.10. That section explicitly says that when a public employer and a union enter into an agreement that "provides for final and binding arbitration of grievances," then the contracted-for grievance procedure controls rather than statutory provisions of the state Personnel Board of Review and Civil Service Commission.

The reason for such a provision is quite obvious. Special provisions for the determination of grievances have long been justified in public employment because such workers are frequently forbidden to organize and thus forbidden to use the provisions for the protection of workers that are often available through union contracts. Where such contracts are available, it is sensible that they should be used, and this statute embodies that understanding. The grievance procedure employed here is a quite conventional one, leading through various stages to final and binding arbitration. The court has, however, fastened on what occurs at step three of the process. If earlier attempts at resolution have failed, the grievance is submitted to a board composed of equal numbers of union and management representatives. It is only if this board is equally divided that the grievance will proceed to final and binding arbitration.

It is clear to me that this step does not deprive the entire process of its character as one "leading to final and binding arbitration." At each step in a grievance procedure, there is a *possibility* that one side or the other will give in or modify its position to the extent that a resolution can be reached. If this were not so, all of the steps before final arbitration would simply be a sham that must be played out before the ultimate decision. The fact that in *this* procedure one step is composed of multiple persons representing each interest should make no difference. At the earlier steps in this proceeding, and in every step of any proceeding, the contest will go forward toward final and binding arbitration only if each side sticks to its guns and makes no concessions. That is all that has happened here. Each side has agreed to put its interests in the hands of a multi-member grievance commission to which *it* has appointed

half the members. I see no way that this process would ever have been thought, by either of the parties to the contracts, as not being one that leads to final and binding arbitration.

Controversies over the meaning of "final and binding arbitration" generally concern whether the ultimate result of the process is definitive and enforceable. *See General Drivers, Warehousemen, and Helpers, Local Union No. 89 v. Riss and Co.*, 372 U.S. 517, 519–20, 83 S.Ct. 789, 791, 9 L.Ed.2d 918 (1963). As the Supreme Court notes there, "if the award ... is the parties' chosen instrument for the definitive settlement of grievances ... it is enforceable [as final and binding]." *Id.* at 519, 83 S.Ct. at 791. There is no doubt that the arbitration process in this case is the parties' chosen instrument, and is enforceable. *See also Rowan v. Sober, Inc.*, 69 Lab.Cas. (CCH) ¶ 13,164, 1972 WL 921 (E.D.Mich.1972); 88 LRRM 2997, 76 Lab.Cas. (CCH) ¶ 10,724, 1975 WL 1033 (1975) (Keith, D.J.).

I would thus hold that the district court erred in not dismissing the suit as barred by Section 4117.10 and the failure of plaintiffs to proceed under the contract. This would render unnecessary discussion of many of the remaining claims. Assuming, however, that Ohio Revised Code § 124.34 does apply in this case, I have no quarrel with the determination of those claims.