IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE

FILED

November 4, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

FOR PUBLICATION

| | | |
|---|---|---|
| LEONARD L. ROWE, | ) | **Filed:** November 4, 1996 |
| | ) | |
| Plaintiff/Appellee, | ) | HAMILTON CHANCERY |
| | ) | |
| v. | ) | Hon. R. Vann Owens, |
| | ) | Chancellor |
| BOARD OF EDUCATION of the | ) | |
| CITY OF CHATTANOOGA; | ) | |
| and DR. HARRY REYNOLDS, | ) | |
| SUPERINTENDENT of SCHOOLS | ) | |
| of the CITY OF CHATTANOOGA, | ) | |
| TENNESSEE, | ) | No. 03-S01-9603-CV-00033 |
| | ) | |
| Defendants/Appellants. | ) | |

FOR PLAINTIFF/APPELLEE:          FOR DEFENDANTS/APPELLANTS:

Richard T. Klinger                Randall L. Nelson
Kennedy, Fulton, Koontz & Farinash   City of Chattanooga, City Attorney
Chattanooga, Tennessee            Chattanooga, Tennessee

                                  Michael A. McMahan &
                                  Kenneth O. Fritz, Special Counsel
                                  Chattanooga, Tennessee


FOR AMICUS CURIAE DON LOFTIS
SUPERINTENDENT OF SCHOOLS, HAMILTON COUNTY:

William E. Godbold, III & D. Scott Bennett
Chattanooga, Tennessee


# O P I N I O N


TRIAL COURT AND
COURT OF APPEALS REVERSED.                    DROWOTA, J.

The Board of Education of the City of Chattanooga and Dr. Harry Reynolds, Superintendent of Chattanooga schools, appeal from the Court of Appeals' decision finding that Leonard L. Rowe was deprived of liberty without due process of law by a Board policy which renders any employee previously terminated "for cause, inefficiency, or immorality" ineligible for future employment within the Chattanooga school system. The primary issue for our review is whether adoption of Board policy 4117.5 deprived Rowe of a constitutionally protected property or liberty interest to which the requirements of procedural due process apply.[1] For the reasons that follow, we conclude that due process is not implicated because the Board policy did not deprive Rowe of either a protected property or liberty interest. Accordingly, the judgment of the Court of Appeals is reversed.

**B A C K G R O U N D**

Rowe is a certified and licensed school teacher. In addition, he has two master's degrees and is certified as an educational specialist. He began teaching in the Chattanooga school system in 1967, but was denied tenure at the end of the 1968-69 school year. After brief service in the military, Rowe returned to teaching in Chattanooga and was granted tenure in either 1972 or 1973. He continued teaching in the Chattanooga system until 1980 when he was discharged "for cause, including insubordination, and inefficiency." The charges against Rowe primarily arose from his conduct during and after a discussion with the principal about Rowe's evaluation. Specifically, Rowe was charged with walking

---

[1]Since our disposition of this issue resolves the case, we pretermit the other issues raised by the parties. With respect to Rowe's argument in his brief to this Court that the Board's policy and refusal to consider him for future employment violates substantive due process we note that other courts considering the issue have declined to extend substantive due process protections to property interests in employment or to "occupational liberty interests." Zorzi v.County of Putnam, 30 F.3d 885, 894-95 (7th Cir. 1994); McKinney v. Pate, 20 F.3d 1550, 1560 (11th Cir. 1994); Sutton v. Cleveland Board of Education, 958 F.2d 1339, 1350-51 (6th Cir. 1992); Reinhart v. City of Maryland Heights, 930 F.Supp. 410, 413 (E.D. Mo. 1996).

out of two conferences called by the principal, refusing to enter into discussion with the principal, and stating that the principal had not been truthful about previous events. After a hearing before the Board, Rowe was dismissed. Rowe appealed the dismissal, but the Board's decision was upheld by both the Chancellor and the Court of Appeals.

Beginning in 1986 or 1987, Rowe again attempted to obtain a teaching job in the Chattanooga school system. He was placed on the substitute teacher's list in 1987 and worked on a part-time, as needed basis, approximately one-half of the school days that year. There were no negative occurrences reported as a result of his employment, and Rowe received favorable recommendations for full time employment from the principals of two schools where he taught. Sometime after the school year ended, however, Reynolds, the new superintendent of schools, was asked by Board members why Rowe's name was placed on the substitute teacher's list when he previously had been discharged for cause by the Board. Upon verifying Rowe's prior for cause dismissal, Reynolds directed that Rowe's name be removed from the substitute teacher's list.

Despite his removal from the substitute teacher's roster, Rowe continued to apply for full-time, permanent employment within the Chattanooga school system. When his efforts proved unsuccessful, Rowe filed a complaint with the City of Chattanooga Human Rights and Human Relations Commission in 1990, alleging that the Board had discriminated against him on the basis of race by removing his name from the substitute teacher's list and by hiring applicants for two vacant principal positions for which he had applied. After a full investigation and a hearing, the Commission concluded that Rowe had failed to establish racial discrimination, but recommended that the Board adopt a uniform policy to address

"previously dismissed teachers' and substitute teachers' ability to obtain

employment within the Chattanooga Public Schools."  In response, the Board, on

April 8, 1991, adopted policy 4117.5, which provides as follows:

> Any employee of the Board of Education terminated for
> cause, inefficiency, or immorality shall not be eligible
> for reemployment, whether at the same or different
> level.  Neither shall such individuals be eligible for
> employment on a contract basis, including serving as
> substitute teacher.

Thereafter, Rowe filed a complaint pursuant to 42 U.S.C. § 1983 against

the Board and Reynolds, alleging that their refusal to consider him for a position in

the Chattanooga school system violated his rights under the Fourteenth

Amendment of the United States Constitution.  Rowe sought a declaratory

judgment that Board policy 4117.5 was an unconstitutional infringement upon his

property and liberty rights to pursue his chosen occupation.  In addition, he sought

back pay from the time the Board had adopted the policy, alleging that he would

have been hired had the policy not been adopted.

Following a bench trial, the chancellor invalidated the policy, but refused to

award Rowe any other relief, concluding there was no proof "to indicate that Mr.

Rowe would have been rehired but for this policy statement."

Rowe appealed from this judgment to the Court of Appeals.  That court

affirmed the chancellor's ruling that the policy is unconstitutional, concluding that

the Board's adoption and enforcement of the policy had deprived Rowe of his

constitutionally protected liberty interest in pursuing his chosen occupation without

due process of law.  However, the Court of Appeals reversed the trial court's

finding that Rowe would not have been rehired even if the policy had not been

adopted. The Court of Appeals remanded the cause to the trial court for a hearing to determine the damages, if any, to which the plaintiff is entitled.

We granted the Board and Reynolds permission to appeal to address the parameters of the property and liberty interests which are protected by the Fourteenth Amendment's guarantee of due process. For the reasons that follow, we reverse the judgment of the trial court and the Court of Appeals.

## PROCEDURAL DUE PROCESS

Section 1983 of Title 42, U.S.C., "provides a remedy for the deprivations of rights secured by the Constitution and laws of the United States." Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 924, 102 S.Ct. 2744, 2747, 73 L.Ed.2d 482 (1982). In this case, Rowe alleged that Board policy 4117.5 violated his rights under the Fourteenth Amendment which protects individuals against government deprivations of "life, liberty or property without due process of law . . . ." U.S. Const. amend. XIV, § 1. A section 1983 action based upon procedural due process thus has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process. Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993). In addressing a claim of an unconstitutional denial of procedural due process, we apply a two-step analysis. Initially, we must determine whether Rowe's interest rises to the level of a constitutionally protected liberty or property interest. If there is a constitutionally protected interest, then the second step is to weigh the competing interests of the plaintiff and government to determine what process is due and whether deprivation has occurred. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569-70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Rowe contends that the defendants violated his "property" and "liberty" interests,

embodied in the Due Process Clause of the Fourteenth Amendment, to pursue his chosen occupation and profession without arbitrary governmental interference.

## A. Property Interest

The Fourteenth Amendment's procedural protection of property safeguards the security of interests that a person has already acquired in specific benefits. Roth, 408 U.S. at 576, 92 S.Ct. at 2708. Property interests are not created by the federal constitution. Instead, they are created and defined "by existing rules or understandings that stem from an independent source such as state law." Roth, 408 U.S. at 577, 92 S.Ct. 2709. To be entitled to procedural due process protection, a property interest must be more than a "unilateral expectation" or an "abstract need or desire." It must be a "legitimate claim of entitlement" to a specific benefit. Id. Indeed it is the purpose of the ancient institution of property to protect those expectations upon which people rely in their daily lives. Id.

Under Tennessee law, teachers who have been granted tenure have a constitutionally protected property interest in continued employment which can not be extinguished unless the teacher is afforded procedural due process. Williams v. Pittard, 604 S.W.2d 845, 849 (Tenn. 1980); Tenn. Code Ann. § 49-5-511 (1996). Substitute teachers are not tenured, however, and have no "legitimate claim of entitlement" to continued employment sufficient to give rise to a property interest. Tenn. Code Ann. § 49-5-503 (1996). Moreover, Rowe's attempts to attain future employment with the Chattanooga system does not rise to the level of a "legitimate claim of entitlement," but is more accurately described as a "unilateral expectation" or an "abstract need or desire" for it. Therefore, Rowe has failed to establish that he was deprived of a constitutionally protected property interest by the adoption of policy 4117.5 or his removal from the substitute teachers' roster.

## B. Liberty Interest

We next consider whether Rowe was deprived of a constitutionally protected liberty interest without due process of law by the adoption of policy 4117.5. The concept of liberty in Fourteenth Amendment jurisprudence includes the "liberty to engage in any of the common occupations of life . . . ." Roth, 408 U.S. at 572, 92 S.Ct. at 2707. In Roth, a non-tenured teacher at a state university alleged his due process rights were violated when the school failed to provide him with a statement of reasons or a hearing when it declined to renew his one-year contract. The Supreme Court concluded that a simple refusal to rehire, without more, does not infringe upon a liberty interest and trigger due process. In so holding, however, the Roth court discussed those situations in which a liberty interest might be implicated by unfavorable employment action.

> The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in the community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty or immorality. Had it done so, this would be a different case. For where a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential. In such a case, due process would accord an opportunity to refute the charge before University officials. In the present case, however, there is no suggestion whatever that the respondent's good name, reputation, honor, or integrity is at stake.
>
> Similarly, there is no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities. The State, for example, did not invoke any regulations to bar the respondent from all other public employment in state universities. Had it done so, this, again, would be a different case, for to be deprived not only of present government employment but of future opportunity for it certainly is no small

injury. . . .

Roth, 408 U.S. at 573-74, 92 S.Ct. 2707 (footnotes, internal citations, and quotations omitted).

Roth's general outline of factual circumstances giving rise to a liberty interest has been further developed in a series of subsequent cases beginning with Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). In that case, the Court held that injury to reputation, standing alone, does not implicate a liberty interest protected by the Fourteenth Amendment. Rather, the Paul court explained that an actionable liberty interest deprivation requires the loss, infringement or denial of a governmental right or benefit previously enjoyed, coupled with alleged defamatory communications by government officials which have a stigmatizing effect. Paul, 424 U.S. at 710-12, 96 S.Ct. at 1165. Later that same year, the Court held that no liberty interest deprivation occurs unless the alleged defamatory communications are made public and the plaintiff alleges that the defamatory communication is substantially false. Bishop v. Wood, 426 U.S. 341, 349, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976); Codd v. Velger, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977). Most recently, in Siegert v. Gilley, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), the Court refused to recognize a protected liberty interest in favor of a clinical psychologist who resigned from employment at a federal hospital and who, three weeks later, was the subject of an extremely negative employment reference. Even though the negative reference foreclosed employment positions at other federal facilities, the Court refused to recognize the loss as a protected liberty interest because the alleged defamation was not uttered incident to the termination of the plaintiff's employment, but allegedly occurred several weeks after his voluntary resignation. Siegert, 500 U.S. at 234, 111 S.Ct. at 1794.

From the foregoing cases it is clear that a plaintiff claiming a liberty interest deprivation must allege a loss, infringement, or denial of a governmental right or benefit previously enjoyed, coupled with published defamatory communications by government officials in connection with the loss, infringement or denial of the right or benefit.  In addition, a plaintiff must allege both that the defamatory communications are substantially false and that they have such an extensive stigmatizing effect upon plaintiff's standing and associations in the community that future employment opportunities are foreclosed.

Applying that test to the facts in this case, it is clear that Rowe failed to establish a liberty interest deprivation.  Assuming that Board policy 4117.5 denies to Rowe a governmental right previously enjoyed -- the right to apply for employment within the Chattanooga City school system-- Rowe does not allege that the Board or Reynolds or any other government official published substantially false defamatory communications about him in connection with the denial of that right which resulted in foreclosure of future employment opportunities.  For example, Rowe does not allege that the Board or Reynolds, in removing his name from the substitute teacher's list and adopting the policy rendering him ineligible for future employment within the Chattanooga city school system, leveled false charges of dishonesty or immorality against him.  Had such an allegation been present, then due process would accord to Rowe notice and a hearing in which he would be given the opportunity to "clear his name."  Roth, 408 U.S. at 573, n. 12, 92 S.Ct. at 2707, n. 12; Codd, 429 U.S. at 627, 97 S.Ct. at 884.

Here, however, Rowe asserts only that the Board and Reynolds removed his name from the substitute teacher's list and refused to consider him for future employment within the Chattanooga school system because he previously had

been dismissed "for cause, including insubordination, and inefficiency." Rowe has failed to allege that the reasons given by the Board for his removal and ineligibility for future employment were defamatory and substantially false. Rowe does not assert that the description of his prior dismissal is inaccurate. Nonetheless, such an allegation would not salvage Rowe's claim because liberty interests are not implicated by allegations of improper or inadequate performance. Joelson v. United States, 86 F.3d 1413, 1420-21 (6th Cir. 1996); Gregory v. Hunt, 24 F.3d 781, 788 (6th Cir. 1994); Wheaton v. Webb-Petett, 931 F.2d 613, 617 (9th Cir. 1991). To implicate liberty interests, the defamatory governmental communication must stigmatize or otherwise burden the plaintiff so that he is not able to take advantage of other employment opportunities. Joelson, 86 F.3d at 1421; Portman, 995 F.2d at 907. A charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation. Roth, 408 U.S. at 574, n. 13, 92 S.Ct. at 2707, n. 13. Here, Rowe's removal and ineligibility resulted from his prior dismissal for cause. Neither the Board's policy nor Reynolds actions stigmatized Rowe or impaired his ability to seek and obtain employment outside the Chattanooga school system. Rowe was not deprived of a constitutionally protected liberty either by his removal from the substitute teachers' list or by the Board's adoption of policy 4117.5. He can not now complain about the effect of his prior dismissal for cause, a proceeding in which he was afforded due process, on his future employment opportunities. Finally, the Board's policy, which is designed to ensure competent educators by denying employment to persons previously discharged for cause, is rational and does not violate equal protection.

## CONCLUSION

Because Rowe has failed to prove the existence of a constitutionally

protected property or liberty interest, the requirements of procedural due process do not apply in this case. Accordingly, the judgments of the Court of Appeals and the chancery court are reversed and the cause dismissed. Costs of this appeal are taxed to the appellee, Leonard L. Rowe.

_____
Frank F. Drowota, III
Justice

Birch, C. J.
Anderson, Reid, JJ