(No. CA 10819—Decided August 15, 1988.)

*Brannon, Hall & Tucker* and *Michael L. Tucker,* for appellants.

*Arthur W. Harmon, Jr.* and *Maureen Pero,* for appellee.

WOLFF, J. Relators, April Biddle, Roger Ridgeway, and Chris Rochow, were appointed to the Dayton Police Department as recruits on August 17, 1986. They then began their training at the Dayton Police Academy. On December 11, 1986, relators were all promoted to the classification of police officer. Pursuant to the city charter, the relators were classified civil servants from the date of their initial appointment to the police academy. On or about June 2, 1987, the relators were all discharged from the department.

On July 23, 1987, the relators filed a complaint in mandamus in the court of common pleas, seeking reinstatement to the department, back pay, benefits of office, and attorney fees. The respondent city filed a motion to dismiss or, in the alternative, a motion for summary judgment, on August 20, 1987. On January 22, 1988, the trial court issued a decision and entry sustaining the city's motion to dismiss.

The relators have appealed, asserting the following assignments of error:

"1.  The lower court erred by ruling that O.R.C. § 4117.01 et seq., the Public Employment Collective Bargaining Law, sanctions the conflict between the classified civil service probationary period articulated by the Dayton City Charter and the probationary period articulated by the Collective Bargaining Agreement existing between the City of Dayton and the F.O.P.

"2.  The lower court erred in ruling that Relators have an adequate remedy in the ordinary course of law because of Relators' purported ability to file a complaint with the State Employment Relations Board (SERB)."

This case involves the conflict between the city's civil service laws as to probationary periods, and the probationary provisions of the city's collective bargaining agreement with the Fraternal Order of Police ("FOP"). The issue is whether the city's civil service rules, promulgated pursuant to

the city charter, supersede the provision of the collective bargaining agreement under the "Home Rule" provisions of the Ohio Constitution. Ohio Constitution, Section 7, Article XVIII.

The collective bargaining agreement between the city and the FOP was executed on July 7, 1986. The agreement was entered into pursuant to R.C. Chapter 4117, the Public Employees' Collective Bargaining Act (the "Act"). The agreement provision at issue in this case is found in Section 4, Article II, which provides:

*"The probationary period for employees covered hereunder consists of six (6) calendar months from the date of appointment or promotion to the classification of Police Officer.* During said probationary period employees covered hereunder may be suspended, terminated, or relieved of duty without a showing of just cause. Probationary employees are entitled to sick leave, up to seven (7) calendar days of injury leave, life insurance, medical insurance and the accrual of vacation benefits." (Emphasis added.)

The relevant provisions of the city's Civil Service Rules and Regulations are contained in Sections 1 and 2 of Rule 10:

*"Section 1. Initial Appointment.* All persons initially appointed in the competitive or noncompetitive class shall be subject to a probationary period. This period is regarded as an integral part of the examination process and may be used to remove any employee who does not meet the required standards of professional and personal performance, with no right of appeal.

*"Section 2. Length.* The probationary period shall be for six (6) months following appointment. The probationary period shall be extended by the number of days during which the employee was absent without pay within his/her probationary period. A probationary employee may be discharged or reduced at any time within said period of six (6) months upon the recommendation of the director of the department or agency in which said probationer is employed, with the approval of the City Manager and the majority of the Board."

The relators' argument is that under the civil service rules, their probationary period began on August 17, 1986, the date of their initial appointment to the police academy as police recruits. The relators argue that their six-month probationary period therefore expired in February 1987, and that the city could not discharge them in June 1987, without the required pretermination and post-termination hearings.

The city counters by arguing that the relators were covered by the collective bargaining agreement when they were promoted to the classification of police officer on December 11, 1986. Under the terms of the agreement, the relators were still probationary employees on June 2, 1987, and could therefore be discharged without cause.

The Ohio Public Employees' Collective Bargaining Act was adopted by the legislature in 1984, and, for the first time, provided public employees with the right to collectively bargain concerning wages and other conditions of employment. R.C. 4117.10(A) provides, in part, that "Chapter 4117. of the Revised Code prevails over any and all other conflicting laws, resolutions, provisions, present or future, except as otherwise specified in Chapter 4117." The same code section provides in pertinent part:

"Where no agreement exists or where an agreement makes no specification about a matter, the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and condi-

tions of employment for public employees. Laws pertaining to civil rights, affirmative action, unemployment compensation, workers' compensation, the retirement of public employees, residency requirements, the minimum educational requirements contained in the Revised Code pertaining to public education * * *, and the minimum standards promulgated by the state board of education pursuant to division (D) of section 3301.07 of the Revised Code prevail over conflicting provisions of agreements between employee organizations and public employers."

R.C. 4117.08 (subjects appropriate for collective bargaining) delineates those matters appropriate for collective bargaining:

"(A) *All matters pertaining to wages, hours, or terms and other conditions of employment and the continuation, modification, or deletion of an existing provision of a collective bargaining agreement are subject to collective bargaining between the public employer and the exclusive representative, except as otherwise specified in this section.*

"(B) The *conduct and grading of civil service examinations, the rating of candidates, the establishment of eligible lists from the examinations, and the original appointments from the eligible lists are not appropriate subjects for collective bargaining.*

"(C) *Unless a public employer agrees otherwise in a collective bargaining agreement,* nothing in Chapter 4117. of the Revised Code impairs the right and responsibility of each public employer to:

"(1) Determine matters of inherent managerial policy which include, but are not limited to areas of discretion or policy such as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, and organizational structure;

"(2) Direct, supervise, evaluate, or hire employees;

"(3) Maintain and improve the efficiency and effectiveness of governmental operations;

"(4) Determine the overall methods, process, means, or personnel by which governmental operations are to be conducted;

"(5) Suspend, discipline, demote, or discharge for just cause, or lay off, transfer, assign, schedule, promote, or retain employees;

"(6) Determine the adequacy of the work force;

"(7) Determine the overall mission of the employer as a unit of government;

"(8) Effectively manage the work force;

"(9) Take actions to carry out the mission of the public employer as a governmental unit.

"The employer is not required to bargain on subjects reserved to the management and direction of the governmental unit except as affect wages, hours, terms and conditions of employment, and the continuation, modification, or deletion of an existing provision of a collective bargaining agreement. A public employee or exclusive representative may raise a legitimate complaint or file a grievance based on the collective bargaining agreement." (Emphasis added.)

At the outset, it must be pointed out that the city's civil service rules apply to *all* of the city's civil servants upon their *initial* appointment in the competitive or noncompetitive class. The agreement on the other hand only applies to the city police department, and does not cover police recruits. There is no question that the FOP is the exclusive bargaining representative for the police department under R.C. 4117.05.

The above-cited provisions clearly set out what areas the legislature in-

tended to cover in R.C. Chapter 4117. The relators contend, however, that the civil service rules enacted pursuant to the city charter prevail over the labor contract enacted pursuant to state law. The relators advance various arguments to support their position. We conclude that these arguments are not well-taken.

Probationary periods are not mentioned in R.C. 4117.08(B), which clearly delineates those areas that the legislature intended to preclude from collective bargaining. A probationary period has nothing to do with the "conduct and grading of civil service examinations, the rating of candidates," or the establishment of or appointments from eligible lists.

Moreover, probationary periods do fall within the ambit of R.C. 4117.08 (C)(2) dealing with employee evaluation, and R.C. 4117.08(C)(5), which deals with employee retention. R.C. 4117.08(C) begins with the proviso, "[u]nless a public employer agrees otherwise in a collective bargaining agreement," which demonstrates a legislative intent that probationary periods are a legitimate subject of collective bargaining. In this case, the FOP agreement clearly speaks of probationary periods.

Relators next contend that this case is controlled by this court's opinion in the case of *In re Probationary Discharge of Greenamyer* (May 24, 1978), Montgomery App. No. 5804, unreported. In that case, this court ruled that the probationary period began to run upon appointment to the police academy. *Greenamyer,* however, was decided before the enactment of the collective bargaining Act in 1984. Prior to 1984, there was no state-wide legal framework governing public-sector labor relations. The 1984 enactment completely redefined state law in this area. The *Greenamyer* case therefore is not applicable in this case.

The "Home Rule" challenge has been made several times in the Ohio courts. These cases have been brought by municipalities that contended that the power of self-government permitted the enforcement of laws which conflicted with R.C. Chapter 4117. The Supreme Court decided two cases in 1986 which, we believe, are dispositive of the case before us.

In *State, ex rel. Dayton Fraternal Order of Police Lodge No. 44,* v. *State Emp. Relations Bd.* (1986), 22 Ohio St. 3d 1, 22 OBR 1, 488 N.E. 2d 181, the court held that R.C. Chapter 4117 is a law of a general nature and statewide concern. *Id.* at 8, 22 OBR at 7, 488 N.E. 2d at 187. In the case of *Kettering* v. *State Emp. Relations Bd.* (1986), 26 Ohio St. 3d 50, 26 OBR 42, 496 N.E. 2d 983, the court expanded on the *Dayton Fraternal Order of Police* case. As the court stated at 53-54, 26 OBR at 45-46, 496 N.E. 2d at 986-987:

"Further, the cities' powers of local self-government are not completely unfettered. · This court has previously acknowledged that, in matters of statewide concern, municipal powers of local self-government may be subordinate to the exercise of the state's police powers. This principle was cogently stated in *Cleveland Electric Illuminating Co.* v. *Painesville* (1968), 15 Ohio St. 2d 125, 129 [44 O.O. 2d 121], where we held:

" 'The power granted under Section 3 of Article XVIII relates to local matters and even in the regulation of such local matters a municipality may not infringe on matters of general and statewide concern.

" 'The test as to matters of local self-government is set forth in the opinion of *Beachwood* v. *Board of Elections of Cuyahoga County,* 167 Ohio St. 369, 371 [5 O.O. 2d 6]:

" ' ' "To determine whether legislation is such as falls within the area of local self-government, the result of

such legislation or the result of the proceedings thereunder must be considered. If the result affects only the municipality itself, with no extraterritorial effects, the subject is clearly within the power of local self-government and is a matter for the determination of the municipality. However, if the result is not so confined it becomes a matter for the General Assembly."

" 'Thus, *even if there is a matter of local concern involved, if the regulation of the subject matter affects the general public of the state as a whole more than it does the local inhabitants the matter passes from what was a matter for local government to a matter of general state interest.' " (Emphasis *sic.*)

The court then went on to discuss the legislative reasoning for the passage of the Act:

"The statewide concern doctrine is certainly applicable in the instant case. Undeniably, the General Assembly was exercising its police power to promote the general safety and welfare in enacting the Public Employees Collective Bargaining Act. As we just observed in *State, ex rel. Dayton Fraternal Order of Police Lodge No. 44,* v. *State Emp. Relations Bd.* (1986), 22 Ohio St. 3d 1, 5, prior to passage of the Act there had been over four hundred public employee work stoppages in Ohio between 1973 and 1980. The Act was designed to 'minimize the possibility of public-sector labor disputes,' to bring 'stability and clarity to an area where there had been none,' and to 'facilitate the determination of the rights and obligations of government employees and employers, and give them more time to provide safety, education, sanitation, and other important services.' *Id.*

"* * * Ohio's unfortunate experience with public employee labor strife, described in *Dayton Fraternal Order of Police, supra,* graphically illustrates the need for a statewide framework of collective bargaining for all employees of the state and local governments. * * *

"* * * [T]he enactment of statutes governing public-sector labor relations in Ohio has become a matter of statewide concern which, in the instant case, must prevail over Kettering's attempt to nullify a key and unambiguous statutory provision of the Public Employees Collective Bargaining Act. A myopic insistence on returning a significant portion of Ohio's public employee labor relations to the pre-Act *ad hoc* 'system,' under the rubric of local self-government powers, only invites a return to the very litigation and controversy which had prompted the General Assembly to address that distressing state of affairs." (Footnote omitted.) *Id.* at 55-56, 26 OBR at 46-47, 496 N.E. 2d at 987-988.

As this case is an action in mandamus, the "court must find that the relator has a clear legal right to the relief prayed for, that the respondent is under a clear legal duty to perform the requested act, and that relator has no plain and adequate remedy at law." *State, ex rel. Westchester Estates, Inc.,* v. *Bacon* (1980), 61 Ohio St. 2d 42, 44, 15 O.O. 3d 53, 55, 399 N.E. 2d 81, 82-83.

The trial court in this case found that the relators had not shown any of the three criteria necessary for the issuance of the writ. We agree with the trial court that under *Kettering, supra,* the terms of the collective bargaining Act prevail over any conflicting municipal laws, and that relators have shown no clear legal right to the relief prayed for. The first assignment is overruled.

In their second assignment, relators contend that the lower court erred in determining that the relators had an adequate remedy at law. The lower court indicated that the relators had the ability to file a complaint with the

State Employment Relations Board pursuant to R.C. 4117.11(B)(6). This section says that it is an unfair labor practice for an employee organization to "[f]ail to fairly represent all public employees in a bargaining unit."

As we have already determined above that the trial court correctly held relators do not have a "clear legal right to the relief prayed for," this assignment is moot. The second assignment is overruled.

The judgment will be affirmed.

*Judgment affirmed.*

WILSON and BROGAN, JJ., concur.