## Columbus
## v.
## State Employment Relations Bd.
[Cite as 7 AOA 394]

Case No. 90AP-87
Franklin County, (10th)
Decided September 4, 1990

Donald R. Keller, Bricker & Eckler, for Appellant.

Anthony J. Celebrezze, Jr., Attorney General, and Barbara Serve, for Appellee.

William C. Moul, Thompson, Hine & Flory, for Intervenor-Appellee.

McCORMAC, J.

On April 15, 1986, intervenor-appellee, Local Union No. 67, International Association of Fire Fighters ("union"), filed a charge with appellee, State Employment Relations Board ("SERB"), alleging that appellant, city of Columbus ("city"), was guilty of an unfair labor practice in violation of R.C. 4117.11(A)(1) and (5). The union alleged that the city's unilateral discontinuation of adding seniority points to written promotional examination scores within the Division of Fire was contrary to the Ohio Public Employees Collective Bargaining Act, R.C. Chapter 4117. SERB found that the city did engage in an unfair labor practice and issued a cease and desist order on September 17, 1987. The city appealed to the Franklin County Court of Common Pleas. The trial court affirmed the agency's order, finding that SERB's decision was supported by substantial evidence and was in accordance with law.

The city now appeals the common pleas' judgment and raises the following assignment of error:

"THE BOARD ERRED TO THE PREJUDICE OF THE CITY BY CONCLUDING THAT THE CIVIL SERVICE COMMISSION'S UNILATERAL RESCISSION OF THE CIVIL SERVICE RULE, PROVIDING FOR THE ADDITION OF SENIORITY POINTS TO THE PROMOTIONAL EXAMINATION SCORES OF CANDIDATES FOR PROMOTION IN THE DIVISION OF FIRE, CONSTITUTED A REFUSAL TO BARGAIN IN VIOLATION OF R.C. 4117.11 (A)(1) AND (A)(5)."

The city and union were parties to a collective bargaining agreement, the term of which was from October 1, 1984 through May 31, 1987, in which the city recognized the union as the exclusive representative of a bargaining unit consisting of all uniformed employees of the Columbus Division of Fire, exclusive of the fire chief and assistant fire chiefs. The union's initial contract proposal included a definition of seniority and provided that seniority points would continue to be counted towards promotion as was currently practiced by the Columbus Civil Service Commission. When the union made its proposal, Civil Service Commission Rule VIII(B)(2) provided that, on promotional examinations for fire lieutenant, one point would be added for each of a candidate's first four years in service and six tenths of one point would be added for each of the next ten years, up to a total of ten points. On promotional examinations for ranks above lieutenant, an additional point would be added for each of the first five years of service in the candidate's current rank. These points would then be added to a candidate's raw score on the competitive examination in order to establish promotional eligibility lists.

The agreement ultimately reached between the parties slightly altered the union's proposal to include language stating that the parties to the agreement would jointly petition the Columbus Civil Service Commission to adopt the promotional rule requested by the union, which was to maintain the status quo. James Farber, the city's chief negotiator, testified at the SERB hearing that the city had no objections to the continued use of seniority points but it was the city's position that the Civil Service Commission had exclusive jurisdiction over promotion. The city reasoned that R.C. Chapter 4117 was subservient to the city's home rule powers and the parties were without authority to negotiate on subjects reserved to the jurisdiction of the Civil Service Commission by the city's charter. The hearing officer found that the city's understanding of the "jointly petitioned" language was that it had no obligation concerning senior-

ity points other than to petition the Civil Service Commission. If the commission adopted the rules, the city would abide by them.

Robert Shields, the union's chief negotiator, also testified and substantially corroborated the testimony of Farber. It was the union's understanding that the adoption of seniority points was a *fait accompli* and that petitioning the commission was merely a procedural prerequisite.

On June 27, 1985, the parties did, in fact, jointly petition the Civil Service Commission regarding the use of seniority points. However, on March 28, 1986, the Columbus Civil Service Commission amended its rules by rescinding Rule VII(C)(4) and VIII(B)(2) and adopting Rule IX(G)(1)(a) through (c). In effect, these rule changes eliminated the use of seniority points when compiling eligibility lists. The union did not file a grievance addressing the rule change, nor did the city offer to further negotiate the issue of seniority points. Instead, the union filed a charge with SERB who, after finding there was probable cause for believing an unfair labor practice was being or had, been committed, directed a complaint to be issued.

The city contends that the common pleas court erred by affirming the decision of that the city committed an unfair labor practice argues that the addition of seniority points to promotional examination scores is a prohibited subject of bargaining within the meaning of R.C. 4117.08(B).

R.C. 4117.08(B) provides:

"(B) The conduct and grading of civil service examinations, the rating of candidates, the establishment of eligible lists from the examinations, and the original appointments from the eligible lists are not appropriate subjects for collective bargaining."

The city argues that R.C. 4117.08(B) prohibits bargaining on promotional appointments as well as original appointments. It is the city's position that the term "original" applies only to the last clause of the section, concerning pre-hire eligible lists appointments, and not to the first three clauses which the city contends pertain to promotional appointments. Following this logic, no promotional eligibility issues could be the subject of collective bargaining. For the reasons that follow, we are of the opinion that "original" was meant to apply to the entire provision, thus making only pre-hire eligibility a non-negotiable issue under R.C. 4117.08(B).

It must be assumed that the General Assembly was well aware of the terms it used when writing the statute. By the use of the connector "and," instead of "or," it can be assumed that the term "original" was meant to apply to all of the described procedures. If so, only original appointments were designated as inappropriate subjects for collective bargaining. This is precisely the conclusion that the trial court reached when it cited the statutory maximum of *expressio unius est exclusio alterius.*

Additional support for the above proposition comes from a reading of R.C. 4117.08 in its entirety. See *Biddle v. Dayton* (1988), 48 Ohio App. 3d 116. R.C. 4117.08(C), in pertinent part, provides:

"(C) Unless a public employer agrees otherwise in a collective bargaining agreement, nothing in Chapter 4117. of the Revised Code impairs, the right and responsibility of each public employer to:

"***

"(5) Suspend, discipline, demote, or discharge for just cause, or lay off, transfer, assign, schedule, promote, or retain employees;
"***."

Generally, R.C. 4117.08(C) sets forth certain items that are within the control and responsibility of the public employer. However, the section specifically allows the employer to bargain away any rights it may have over the supervision of those areas listed. Promotion is one such area specifically addressed. To permit a public employer to bargain over the conditions of promotion in subsection (C) is irreconcilable with an interpretation of subsection (B), which excludes promotion from the list of bargainable issues. Conflict will not be read into a statute when separate provisions can be read in harmony.

Further support can be found in the language of R.C. 4117.08 (A), which states that "*** [a]ll matters pertaining to wages, hours, or terms and other conditions of employment *** are subject to collective bargaining ***." R.C. 4117.08(C) continues this same thought when it provides that "[t]he employer is not required to bargain on subjects reserved to the management and direction of the governmental unit except as affect wages, hours, terms and conditions of employment ***." The Supreme Court has noted that R.C. Chapter 4117 was "*** intended to bring about a balance in Public Employment Relations." *Lorain City Bd. of Edn. v.*

*State Emp. Relations Bd.* (1988), 40 Ohio St. 3d 257, 261. A public employer must be allowed to manage its affairs as it sees fit except and until the employer's decision affects an employee's wages, hours, terms or conditions of employment.

Promotion inevitably has a direct impact on wages, hours, and terms of employment. A fire fighter promoted to a higher rank will see his a hourly wage increase and possibly see a change in work schedule. He may no longer physically fight fires but may assume a supervisory capacity over those who do, It must be assumed that the General Assembly realized this when it included promotion as one item that was bargainable even though it was generally an area of employer responsibility when R.C. 4117.08(C)(5) was drafted.

Finally, it logically follows that R.C. 4117.08(B) only applies to original appointments. Prior to obtaining public employment, the decision to hire or not to hire an applicant must lie within the sound discretion of the employer. The applicant is not yet a member of any bargaining unit and, therefore, no employee organization has standing to speak for the applicant. However, once the applicant has been hired and becomes eligible to join the bargaining unit, the issue of promotion directly affects wages, hours, and terms of his employment.

Therefore, since the addition of seniority points to an applicant's raw test score directly affects his position on the promotional eligibility list, and since promotion affects wages, hours, and terms of employment, we conclude that the matter of seniority points is not excluded by R.C. 4117.08(B) and can be the subject of a collective bargaining agreement.

The city next argues that the parties never addressed the seniority points issue. Continuing, the city contends that the clear and unambiguous language of the agreement evidences an intent of the parties to leave the issue in the hands of the Columbus Civil Service Commission. SERB and the trial court both found that the agreement did address the issue of seniority points and that it was the expectation of all parties that the Civil Service Commission would acquiesce to the joint petition and leave seniority points credit as it was. The trial court concluded that, when the commission unilaterally abandoned the use of seniority points, it amounted to a change in the agreement that the city failed to bargain for; thus, a violation of R.C. 4117.11(A)(1) and (5).

In reviewing an order of an administrative agency, this court's role is limited to a determination of whether the trial court abused its discretion. *Lorain, supra.* Abuse of discretion "*** implies a decision which is without a reasonable basis, one which is clearly wrong." *Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App. 3d 159. Our review of the record fails to support the city's contention that the trial court abused its discretion.

Article VI of the agreement provides:

"Section 1. All benefits provided to employees at the initial date of this Agreement and not addressed in this Agreement shall continue to be provided unless changed by mutual agreement of the parties hereto."

Furthermore, Article XXIII states, In part, that "*** [s]eniority points will be counted as currently counted by Civil Service. ***" Therefore, it appears that the parties negotiated to keep the status quo and that, when the Civil Service Commission, an agent of the city, changed the policy, the city was obligated to renegotiate the issue.

The city attempts to confuse the issue by citing Article XXVIII, the general seniority provision. Nowhere in Article XXVIII are seniority points discussed. It is a general maxim of contract construction that, when a general and specific provision are in apparent conflict, the specific provision prevails.

The city also cites *In the Matter of John B. Devennish* (Oct. 24, 1989), Franklin App. No. 89AP-433, unreported (1989 Opinions 4027), in support of its contention that the city's only obligation under the contract was to petition the Civil Service Commission. In *Devennish,* the city and the Fraternal Order of Police sought a change in the Civil service Commission rules. In order to affectuate this change, the joint petition language was inserted. There is nothing in *Devennish* to suggest that the parties disagreed as to this method of implementing the change. Therefore, it appears that the FOP did acquiesce to the city's position that the commission had exclusive jurisdiction over the matter or by the agreement deferred to the commission's rules in this respect. Neither of the bargaining parties had cause to complain because the commission went along with the request. Issues raised herein were not directly before the court in *Devennish* since the commission complied with the petition for a change of the rules.

The present case is distinguishable in that the parties bargained for the status quo and, while perhaps uncertain about the question of whether the petition to the commission was necessary, clearly reached an agreement about an issue that was within their bargaining rights. The city may have desired to retain a home rule argument or to avoid stepping on the commis-sion's toes. In any event, the commis-sion did not have the authority to change the bargain and to alter the status quo unilaterally.

Finally, the city argues that the "home rule" provision of the Ohio Constitution mandates that its charter prevails over R.C. Chapter 4117. Section 3, Article XVI II of the Ohio Constitution provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

Thus, any chartered municipality may adopt police regulations which are paramount unless they conflict with a general law enacted by the General Assembly.

The Supreme Court in *State, ex rel. Dayton Fraternal Order of Police Lodge No. 44, v. State Emp. Relations Bd.* (1986), 22 Ohio St. 3d 1, 5, first addressed this issue and stated "*** [i]t is clear that the Public Employees Collective Bargaining Act is a law of statewide concern since it affects persons in every county of the state." That same year, the court decided *Kettering v. State Emp. Relations Bd.* (1986), 26 Ohio St. 3d 50. The syllabus therein provides:

"R.C. 4117.01(F)(2) is constitutional and does not violate a municipality's right to exercise its powers of local self-government under Section 3, Article XVIII of the Ohio Constitution."

Finally, paragraph two of the syllabus to *Rocky River v. State Emp. Relations Bd.* (1989), 43 Ohio St. 3d 1, provides:

"The Ohio Public Employees Collective Bargaining Act, R.C. Chapter 4117, and specifically R.C. 4117.14(I), are constitutional as they fall within the General Assembly's authority to enact employee welfare legislation pursuant to Section 34, Article of the Ohio Constitution. Section 3, Article XVIII of the Ohio Constitution, the home-rule provision, may not be interposed to impair, limit or negate the Act."

R.C. 4117.08 allows the city and bargaining unit to negotiate over a promotion and, since R.C. 4117.08 has been determined to be a general law, any Civil Service Commission rule enacted under the authority of the city charter may not abridge the bargaining unit's right to negotiate promotional criteria.

Appellant's assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

YOUNG and GOLDSBERRY, J.J., concur.

GOLDSBERRY, J., of the Athens County Common Pleas Court, sitting by assignment in the Tenth Appellate District.