Thomas C. STE. MARIE, Plaintiff–Relator,

v.

CITY OF DAYTON, Defendant–Respondent.

No. C–3–99–513.

United States District Court, S.D. Ohio, Western Division.

July 24, 2000.

Dwight Brannon, Dayton, OH, for Plaintiff.

Rita McNeil, John Danish, Dayton, OH, for Defendant.

## DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO DISMISS (DOC. # 5); LEAVE GIVEN TO PLAINTIFF TO FILE MOTION ADDRESSING SPECIFIC ISSUE WITHIN STATED PERIOD OF TIME

RICE, Chief Judge.

This litigation stems from the termination of Plaintiff Thomas C. Ste. Marie's employment as a police officer for Defendant City of Dayton. The City discharged the Plaintiff for unsatisfactory job performance after he wrecked a police cruiser and participated in an off-duty altercation with a motorist. (Complaint, Doc. # 1 at Exh. 1). In his Complaint, the Plaintiff alleges that the City violated 42 U.S.C. § 1983, by depriving him of a property interest in continued employment, without affording him due process of law. (Doc. # 1, Count I). In addition to compensatory damages, he seeks a writ of mandamus ordering the City to restore him to his former position. (*Id.* at Count II). He also seeks a declaratory judgment that a collective bargaining agreement between the City and his union, the Fraternal Order of Police, Lodge No. 44, is contrary to state and federal law, insofar as it purports to impose a nine-month probationary period on new police officers. (*Id.* at Count III). Finally, he seeks an award of reasonable attorney's fees that he incurred in pursuing this action. (*Id.* at Count IV).

Pending before the Court is a Motion to Dismiss (Doc. # 5), pursuant to Fed. R.Civ.P. 12(b)(6), filed by the City.

### I. *Standard Governing Rule 12(b)(6) Motions*

In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Cline v. Rogers,* 87 F.3d 176, 179 (6th Cir.1996) (citing *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir.1993)); *see also Barrett v. Harrington,* 130 F.3d 246 (6th Cir.1997) ("In considering a motion to dismiss for failure to state a claim, the Court is required to take as true all factual allegations in the complaint."); *Lamb v. Phillip Morris, Inc.,* 915 F.2d 1024, 1025 (6th Cir.1990), *cert. denied,* 498 U.S. 1086, 111 S.Ct. 961, 112 L.Ed.2d 1048 (1991). With the foregoing requirements in mind, the Court turns now to a review of the factual allegations set forth in the Plaintiff's Complaint.

### II. *Factual Background*

The City operates under a "home rule" Charter adopted in accordance with the statutes of Ohio and Sections 8 and 9, Article XVIII, of the Ohio Constitution. (Doc. # 1 at ¶ 4). The Plaintiff was first employed by the City on February 9, 1998, as a police recruit. (*Id.* at ¶ 5). On July 3, 1998, he was appointed to the position of police officer, and he served in the classified civil service, as provided by the Dayton City Charter. (*Id.* at ¶ 6, 36). The Plaintiff subsequently received a "proficient" rating on a job evaluation which covered the period from July, 1998, through March, 1999. (*Id.* at ¶ 7). Nevertheless, the City discharged him on March

30, 1999, ostensibly as a "probationary" employee, for unsatisfactory job performance.[1] (*Id.* at ¶ 8, 10). In support of its decision, the City cited two incidents.[2] The first incident involved an accident in which the Plaintiff lost control of a police cruiser after his power steering failed. (*Id.* at ¶ 11–12). The second incident involved an off-duty altercation with an individual who had been menacing the Plaintiff and his family.[3] (*Id.* at ¶ 13). During an investigation of both incidents, the Plaintiff was honest and open with representatives of the City. (*Id.* at ¶ 18). Although he had been working as a police officer for almost nine months at the time of his discharge, he was terminated without receiving an opportunity for a hearing or for a civil service appeal.[4] (*Id.* at ¶ 23).

When the Plaintiff became a police officer on July 3, 1998, the City and the Fraternal Order of Police, Lodge No. 44, had no collective bargaining agreement because the prior agreement had expired on May 17, 1998.[5] (*Id.* at ¶ 28). The City and the Fraternal Order of Police reached a new collective bargaining agreement in February, 1999, and established a retroactive effective date of May 18, 1998. (*Id.* at ¶ 29). Article II, Section 5 of the new collective bargaining agreement provides for a *nine-month* probationary period following an individual's appointment to the position of police officer.[6] (*Id.* at ¶ 30). In relevant part, the agreement states that "[d]uring said probationary period, employees covered hereunder may be disciplined, reprimanded, suspended, terminated, or relieved of duty, without a showing of just cause. . . . Further, the terms and conditions arising out of Article 11, Discipline and Due Process, and Article 12, Grievance Procedure, with regard to disciplinary matters do not apply to probationary employees. All terms and conditions of this Agreement shall apply to probationary employees other than as set forth herein." (*Id.*).

In contrast to the collective bargaining agreement, Section 99 of the Dayton City Charter provides that "[a]n appointment or promotion shall not be deemed complete until a period of probation not to exceed *six months* has elapsed, and a probationer may be discharged or reduced at any time within the said period of six months, upon the recommendation of the head of the department in which said probationer is employed, with approval of the majority of the Board." (*Id.* at ¶ 24) (Emphasis add-

1. At one point, the Plaintiff alleges that he was discharged in March, 1998. (Doc. # 1 at ¶ 8). A review of the Plaintiff's entire Complaint and the materials attached thereto makes clear that the Plaintiff's discharge actually occurred in March, 1999.

2. After his termination, the Plaintiff filed an application for unemployment compensation. (*Id.* at ¶ 20). A hearing officer for the Unemployment Compensation Review Commission subsequently determined that he had been discharged without just cause. (*Id.* at ¶ 21). The City's request for a review of that ruling was disallowed by the Unemployment Compensation Review Commission. (*Id.* at ¶ 22).

3. Although the Plaintiff's Complaint provides more details about this incident, those details are not relevant to the issue currently before the Court.

4. In his Complaint, the Plaintiff alleges that his failure to receive a hearing or an opportu-

nity for an appeal violated the Dayton City Charter. (Doc. # 1 at ¶ 23). This is a legal conclusion, and it need not be accepted as true by the Court. While a liberal construction of a complaint is contemplated by Fed. R.Civ.P. 12(b)(6), the Sixth Circuit has recognized that a court is not required to "accept as true legal conclusions. . . ." *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987).

5. The Plaintiff alleges at one point in his Complaint that the collective bargaining agreement had expired on May 17, 1999. (Doc. # 1 at ¶ 28). A review of the full Complaint makes clear, however, that the agreement actually had expired on May 17, 1998.

6. As noted, *supra,* the Plaintiff was terminated the month after the City and the Fraternal Order of Police entered into this new collective bargaining agreement. His termination occurred nearly nine months after he began working as a police officer. (Doc. # 1 at ¶ 23).

ed). Section 100 of the Dayton City Charter provides that "[a]n employee shall not be discharged or reduced in rank or compensation until he has been presented with reasons for such discharge or reduction, specifically stated in writing, and has been given an opportunity to be heard in his own defense. The reason for such discharge or reduction and any reply in writing thereto by such employee shall be filed with the Board." (*Id.* at ¶ 25). Finally, Section 101 of the Dayton City Charter provides that "[a]ny employee of any department in the city in the classified service who is suspended, reduced in rank, or dismissed from a department by the director of that department or the City Manager, may appeal from the decision of such officer to the Civil Service Board, and such Board shall define the manner, time, and place by which such appeal shall be heard. The judgment of such Board shall be final." (*Id.* at ¶ 26).

### III. *Analysis*

The pending Motion to Dismiss presents a relatively straightforward issue. The City contends that the Plaintiff's Complaint fails to state a claim upon which relief may be granted because he was a probationary employee at the time of his termination. As a result, the City argues that he was subject to termination without cause, without any due process protection and without the ability to pursue a grievance. (Doc. # 5). In support, the City relies upon the foregoing collective bargaining agreement, which imposes a nine-month probationary period on new police officers and provides for their discharge without cause, without a right to due process and without resort to the grievance and arbitration process. While acknowledging that its Charter authorizes only a six-month probationary period, the City contends that, under Ohio law, the provisions of a collective bargaining agreement prevail over conflicting state and local laws and city charter provisions. *See, e.g., Biddle v. City of Dayton*, 48 Ohio App.3d 116,

548 N.E.2d 329 (2nd Dist.1988); Ohio Revised Code § 4117.10.

In response, the Plaintiff insists that the City deprived him of a protected property interest in continued employment, without affording him due process of law. The Plaintiff contends that he possessed such a property interest because he was a classified civil service employee and had completed his six-month term of probation at the time of his discharge. In support of this argument, the Plaintiff relies upon the Dayton City Charter, which, as noted above, authorizes only a six-month probationary period for newly appointed police officers, and which requires the City to provide non-probationary, classified civil service employees with notice and an opportunity to be heard prior to their termination, as well as access to the grievance and arbitration procedure. Although the Plaintiff does not dispute the City's assertion that a collective bargaining agreement *may* supersede state or local law or a city charter, he insists that the agreement does not do so in the present case. The Plaintiff bases this conclusion on his interpretation of *Sutton v. Cleveland Board of Education*, 958 F.2d 1339 (6th Cir.1992). He reads *Sutton* as establishing that the provisions of a collective bargaining agreement will not prevail over conflicting state statutes or charter provisions if the agreement does not provide for binding arbitration in *all* cases. Because the collective bargaining agreement between the City and the Fraternal Order of Police expressly precluded the Plaintiff from challenging his discharge through binding arbitration, he contends that it cannot supersede *any* aspect of the Dayton City Charter, including the six-month probationary provision. As a result, he insists that the six-month probationary term set forth in the Dayton City Charter applies to him, notwithstanding the nine-month period found in the collective bargaining agreement. Given that the City fired him almost nine months after he became a police officer, the Plaintiff argues that he was not a probationary employee at the time of his termination

and, therefore, that he should have received a hearing and an opportunity to pursue an administrative appeal to the Civil Service Commission. (Doc. # 7).

As the parties' respective arguments make clear, the central issue before the Court is whether the nine-month probationary period contained in the collective bargaining agreement supersedes the six-month probationary period set forth in the Dayton City Charter. Before resolving this issue, the Court notes, as a threshold matter, that it has serious doubts about whether the Plaintiff may be subjected to the nine-month probationary period, even if it does supersede the shorter term found in the Dayton City Charter. As set forth, *supra*, the Plaintiff alleges in his Complaint that *no* collective bargaining agreement existed when he became a police officer on July 3, 1998. (Doc. # 1 at ¶ 6, 28). He contends that the prior agreement had expired on May 17, 1998. (*Id.* at ¶ 28, misidentifying the year as 1999). According to the Plaintiff, the City and the Fraternal Order of Police did not enter into a new collective bargaining agreement until February, 1999. (*Id.* at ¶ 29). At that time, they purported to make the agreement retroactive to May 18, 1998. (*Id.*).

Ohio case law suggests, however, that when no collective bargaining agreement exists, a public employer is subject to the requirements of state laws, local ordinances and city charter provisions. *State ex rel. International Union of Operating Engineers v. City of Cleveland*, 62 Ohio St.3d 537, 584 N.E.2d 727 (Ohio 1992); *see also State ex rel. Chavis v. Sycamore City School Dist. Board of Ed.*, 71 Ohio St.3d 26, 29, 641 N.E.2d 188, 192 (Ohio 1994) ("A collective bargaining agreement does not prevail over conflicting laws where it either does not specifically cover certain matters ... or no collective bargaining agreement is in force."); *State ex rel. Ciccolelli v. Medina*, 1992 WL 292429 (7th

Dist. Oct. 5, 1992) (reasoning that when a collective bargaining agreement expires and has no effect, applicable state statutes control in its place).[7]

In the present case, the Plaintiff alleges that he became a police officer on June 3, 1998. As set forth above, the Dayton City Charter provides a six-month probationary period for new police officers. Consequently, pursuant to the City Charter, the Plaintiff's term of probation expired in early December, 1998. At that time, the City and the Fraternal Order of Police had not yet entered into a new collective bargaining agreement, and the Plaintiff's Complaint contains no indication that they were operating under any type of an interim agreement. Absent the existence of a collective bargaining agreement, however, the foregoing case law suggests that the Plaintiff's term of probation was governed by the Dayton City Charter and had expired *prior to* the adoption of the new agreement in February, 1999. If so, the Court has serious questions about the City's ability to make the effective date of the new collective bargaining agreement retroactive to May 18, 1998, and in so doing, to extend the Plaintiff's term of probation *after* it had expired under the terms of the Dayton City Charter.

Because this issue has not been raised or briefed by the Plaintiff, however, the Court need not resolve it now. Solely for purposes of its analysis herein, the Court will assume, arguendo, that the nine-month probationary term contained in the collective bargaining agreement can be applied to the Plaintiff, if it supersedes the six-month term set forth in the Dayton City Charter. With this assumption in mind, the Court turns now to the issue raised by the pending Motion to Dismiss (Doc. # 5).

■ After reviewing the parties' respective arguments and pertinent case law, the Court concludes that the nine-month probationary period set forth in the collective

7. Absent a collective bargaining agreement, the Dayton City Charter would prevail herein, insofar as the Charter conflicts with the Ohio Revised Code. *See, infra,* at footnote 8.

bargaining agreement between the City and the Fraternal Order of Police *does* supersede the six-month period found in the Dayton City Charter. As set forth above, the Plaintiff does not dispute that "probationary periods are appropriate matters for collective bargaining" under Ohio law. *Biddle*, 548 N.E.2d at 329, paragraph one of the syllabus. Nor does he dispute, as a general proposition, that "[w]here civil service regulations concerning probationary periods are enacted pursuant to a city charter but conflict with terms of a collective bargaining agreement, the terms of the collective bargaining agreement prevail." [8] *Id.* at paragraph two of the syllabus; *see also Fields v. Summit County Executive Branch*, 83 Ohio App.3d 68, 613 N.E.2d 1093, 1095 (9th Dist.1992) ("The provisions of a collective bargaining agreement entered into pursuant to R.C. Chapter 4117 prevail over conflicting laws.").

The Plaintiff contends, however, that the Sixth Circuit's ruling in *Sutton v. Cleveland Board of Education*, 958 F.2d 1339 (6th Cir.1992), compels a different result in the present case. The plaintiffs in *Sutton* were school bus drivers in the classified civil service of the City of Cleveland. *Id.* at 1341. They were placed on "involuntary administrative leave" after the Chief of Transportation discovered that they were convicted felons or had felony charges pending against them. *Id.* at 1342. The plaintiffs filed grievances and later were reinstated, without the matter

ever going to arbitration. *Id.* at 1343. They subsequently filed suit under 42 U.S.C. § 1983, seeking compensatory damages and alleging, inter alia, that they had been deprived of an opportunity to have their removal reviewed by the state Civil Service Commission or the state Personnel Board and, thereafter, the Ohio courts. *Id.* In response, the school board argued that the plaintiffs' sole remedy was the grievance procedure set forth in a collective bargaining agreement, and that the terms of the agreement precluded them from pursuing administrative and judicial review, as otherwise authorized by state law. *Id.*

Upon review, the Sixth Circuit disagreed with the school board's argument. In so doing, the *Sutton* court recognized that Ohio Rev.Code § 124.34 grants suspended or discharged public employees a right to appeal such disciplinary actions, first to the state Personnel Board of Review or the Civil Service Commission, and then to the appropriate Court of Common Pleas. The Sixth Circuit also acknowledged, however, that the provisions of a collective bargaining agreement may supersede state law, including the rights and protections provided by § 124.34. In reaching this conclusion, the *Sutton* court looked to Ohio Rev.Code § 4117.10(A), which provided: [9]

(A) An Agreement between a public employer and an exclusive representative entered into pursuant to Chapter 4117 of the Revised Code governs the wages, hours, and terms and conditions

---

8. Parenthetically, the Court notes that the probationary period set forth in the Dayton City Charter conflicts with Ohio Revised Code § 124.27, which imposes a one-year probationary period for new police officers and provides that "no appointment or promotion is final until the appointee has satisfactorily served the probationary period." It is well settled, however, that when the provisions of a city charter expressly conflict with state law, the city charter usually prevails. *See, e.g., State ex rel. Bardo v. Lyndhurst*, 37 Ohio St.3d 106, 524 N.E.2d 447, 450 (1988) ("The general rule is that in matters of local self-government, if there is a conflict between a charter provision and a statute, the charter

provision prevails."). Thus, in general terms, the following hierarchy exists in Ohio: state statutes control unless they conflict with city charter provisions, and city charter provisions control unless they conflict with the terms of a collective bargaining agreement, which prevails over either state law or city charter provisions, with certain exceptions, as set forth in Ohio Rev.Code § 4117.10.

9. The current version of Ohio Revised Code § 4117.10(A) is nearly identical to the version set forth in *Sutton*. In all relevant respects, the current version and the version in effect at the time *Sutton* was decided are the same.

of public employment covered by the agreement. *If the agreement provides for final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure and the state personnel board of review or civil service commissions have no jurisdiction to receive and determine any appeals relating to matters that were the subject of a final and binding grievance procedure.* Where no agreement exists or where an agreement makes no specification about a matter, the public employer and the public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees.

(Emphasis added).

After reviewing the collective bargaining agreement at issue, the *Sutton* court found that it did not comply with the underscored portion of Ohio Rev.Code § 4117.10(A). In particular, the Sixth Circuit agreed with the lower court's determination that the grievance procedure set forth in the collective bargaining agreement was defective because it did not provide for "final and binding arbitration in all instances." Rather, it provided for grievances to be submitted to a "grievance panel," with binding arbitration available only if the grievance panel deadlocked. The *Sutton* court held that the grievance procedure set forth in the collective bargaining agreement did not comply with Ohio Rev.Code § 4117.10 and, therefore, did not supersede the rights and protections provided by Ohio Rev.Code § 124.34:

> We conclude, as the district court did, that because the collective bargaining agreement failed to meet the requirements of section 4117.10, the agreement did not supersede applicable state law and the grievance and arbitration procedures in the agreement were not the plaintiffs' exclusive means of redress. The plain language of the statute indi-

cates that the grievance procedures of a collective bargaining agreement supersede the statutory administrative and judicial review '[i]f the agreement provides for final and binding arbitration of grievances.' Defendant does not dispute the district court's finding that the grievance procedures at issue do not provide for binding and final arbitration in all instances. Indeed, under step three of the grievance procedure, if the panel votes against the employees, or if it takes no vote at all, employees are not entitled to final and binding arbitration. *Sutton,* 958 F.2d at 1345–1346.

As the foregoing analysis demonstrates, *Sutton* stands for the proposition that a collective bargaining agreement cannot deprive a classified civil service employee who has a protected property interest in his job of the right to seek administrative and judicial review of a disciplinary action under state law, unless it guarantees him an alternative right to obtain review by a neutral arbitrator, the result of which will be binding upon the parties. In *Sutton,* the collective bargaining agreement purported to strip the plaintiffs of their right to seek administrative and judicial review under state law, while providing for arbitration in only a few instances. Finding that such a procedure violated Ohio Rev. Code § 4117.10, the Sixth Circuit held that the agreement did not supersede the administrative and judicial review process provided by Ohio Rev.Code § 124.34.

In the present case, the collective bargaining agreement between the City and the Fraternal Order of Police establishes a nine-month probationary period for new police officers. It also provides that probationary officers may be terminated without cause, without due process and without recourse to a grievance and arbitration procedure. Given that the collective bargaining agreement granted him no right to pursue binding arbitration, however, the Plaintiff cites *Sutton* and argues that the agreement cannot supersede the six-month probationary period set forth in the Day-

ton City Charter, because it does not provide for binding arbitration "in all instances."

The Court disagrees with the Plaintiff's expansive reading of *Sutton*. The general rule in Ohio is that when a collective bargaining agreement provides for final and binding arbitration of grievances, the parties are restricted to that procedure, and the Ohio Civil Service Commission and Personnel Board of Review have "no jurisdiction to receive and determine any appeals relating to matters that were the subject of a final and binding grievance procedure." *See, e.g., Cook v. Maxwell*, 57 Ohio App.3d 131, 134, 567 N.E.2d 292 (1st Dist.1989). In *Sutton*, the Sixth Circuit merely held that this rule does not apply to classified civil service employees who have property interests in their continued employment when a collective bargaining agreement fails to provide for binding arbitration "in all instances." The rationale behind the Sixth Circuit's ruling is clear: Under state law, aggrieved classified civil service employees generally have a right to administrative review of disciplinary actions and, ultimately, to review by a judge. Consequently, a collective bargaining agreement cannot deprive such employees of that right, unless it provides a comparable substitute, namely a guarantee of review by an impartial arbitrator.

Contrary to the Plaintiff's assertion, *Sutton* does not stand for the broader proposition that a collective bargaining agreement cannot supersede *any* aspect of state law simply because it precludes probationary employees from challenging their discharge through binding arbitration. As set forth, *supra*, the relevant portion of the Sixth Circuit's decision in *Sutton* rested upon a sentence in Ohio Rev.Code § 4117.10(A) that addressed the circumstances under which a collective bargaining agreement may deprive an employee of the ability to pursue administrative and judicial review. The availability of binding arbitration was critical in *Sutton*, because the collective bargaining agreement purported to supplant the administrative and judicial review process provided by Ohio Rev.Code § 124.34, and to replace it with a grievance and arbitration procedure. In the present case, however, the extension of the probationary period for new police officers has nothing at all to do with the availability or nonavailability of binding arbitration for classified civil service employees who possess a property interest in their jobs.[10] The two concepts bear no relation to one another, and the concerns addressed by the Sixth Circuit in *Sutton* simply are not implicated by the decision of the Fraternal Order of Police and City to establish a nine-month period of probation for new officers.

In short, the Court finds nothing in *Sutton* which calls into question the well settled proposition that "probationary periods are appropriate matters for collective bargaining" under Ohio law. *Biddle*, 548 N.E.2d at 329, at paragraph one of the syllabus. Nor does *Sutton* undermine the established principle that "[w]here civil service regulations concerning probationary periods are enacted pursuant to a city charter but conflict with terms of a collective bargaining agreement, the terms of the collective bargaining agreement prevail." *Id.* at paragraph two of the syllabus. Therefore, the Court is firmly convinced that *Sutton* does not prevent the City and the Fraternal Order of Police from entering into their collective bargaining agreement and imposing a nine-month probationary period on new police officers.

Assuming, arguendo, that the nine-month term of probation set forth in the collective bargaining agreement applies herein, the Court concludes that the Plaintiff was a probationary employee at the time of his discharge.[11] Indeed, in his

---

**10.** As the Court will explain, *infra, probationary* classified civil service employees such as the Plaintiff do not have a protected property interest in continued employment.

**11.** As set forth, *supra,* the Court assumes,

Complaint, the Plaintiff admits that lacked nine months of service as a police officer when the City discharged him. (Doc. # 1 at ¶ 23). The Plaintiff's status as a probationary employee is dispositive of, and fatal to, the various claims in his Complaint, all of which are based upon an alleged denial of his due process rights. The Sixth Circuit has recognized that "[t]he requirements of procedural due process apply only to the deprivation of 'liberty and property' interests under the Fifth and Fourteenth Amendments." [12] *Hampton v. Hobbs*, 106 F.3d 1281, 1287 (6 th Cir.1997). Consequently, the Due Process Clause only prohibits a state actor from depriving an individual of life, liberty or property without due process of law. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Hahn v. Star Bank*, 190 F.3d 708 (6th Cir.1999). In order to establish a procedural due process claim, the Plaintiff must demonstrate that he had a protected property interest in his employment as a police officer, that the City deprived him of that interest, and that he received less process than was due. *Id.* at 716.

Given that the Plaintiff was a probationary employee at the time of his termination, however, the Court concludes that he had *no* property interest in continued employment. As a result, he was not entitled to any due process protection, and he cannot state a claim against the City under the Fifth or Fourteenth Amendments. In reaching this conclusion, the Court looks to Ohio law, because property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.... " *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

■ Under well settled Ohio law, a probationary government employee has no recognized property interest in his employment until he completes his term of probation. *Matulin v. Village of Lodi*, 862 F.2d 609, 616 (6th Cir.1988); *Bashford v. City of Portsmouth*, 52 Ohio St.3d 195, 198, 556 N.E.2d 477 (1990); *Walton v. Montgomery County. Welfare Dept.*, 69 Ohio St.2d 58, 430 N.E.2d 930 (1982). In his Memorandum, however, the Plaintiff insists that he *did* possess a property interest in his job, because he was in the "classified" civil service. According to the Plaintiff, "[i]t is beyond dispute that classified civil servants in Ohio have a property interest in their continued employment, which cannot be taken away from them without due process." (Doc. # 7 at 5). In support of this proposition, he cites *Loudermill*, 470 U.S. at 532, 105 S.Ct. 1487. (*Id.*).

■ In *Loudermill*, the Supreme Court did indeed state that, under Ohio law, "classified civil servants" can be discharged only for cause, and that they possess property rights in continued employment which may not be taken away

---

solely for purposes of its analysis herein, that the nine-month probationary period set forth in the collective bargaining agreement may be applied to the Plaintiff. While the Court has determined that the nine-month period contained in the agreement *does* supersede the six-month period contained in the Dayton City Charter, it is not at all clear that the Plaintiff may be subjected to the collective bargaining agreement provision, given that the agreement was not adopted until approximately the *eighth* month of the Plaintiff's employment as a police officer (i.e., *after* his six-month period of probation would have expired under the City Charter). As the Court has explained, however, given that the parties have not raised or briefed this issue, it will assume, for present purposes, that the Plain-

tiff may be subjected to the nine-month probationary period contained in the collective bargaining agreement, notwithstanding the fact that no such agreement appears to have been in effect for the first eight months of his employment. In light of the Court's uncertainty regarding this issue, which has been addressed more fully, *supra*, it will overrule the City's Motion to Dismiss (Doc. # 5), despite its rejection herein of the argument contained in the Plaintiff's Memorandum in Opposition (Doc. # 7).

**12.** In the present case, the Plaintiff does not appear to allege a violation of substantive due process.

without due process of law. *Id.* at 538, 105 S.Ct. 1487, *et seq.* The Sixth Circuit has reached the same conclusion. *See, e.g., Collyer v. Darling,* 98 F.3d 211, 223 (6th Cir.1996), citing Ohio Rev.Code § 124.34, which provides that a "classified" civil servant cannot be removed except for cause. Notably, however, *Loudermill* and its progeny have involved permanent (i.e., non-probationary) employees in the classified civil service.

While Ohio Rev.Code § 124.34 purports to grant every classified civil service employee a property interest in continued employment, that provision must be read in conjunction with Ohio Rev.Code § 124.27, which requires a term of probation for police officers in the classified civil service and states, in relevant part: "... [N]o appointment or promotion is final until the appointee has satisfactorily served the probationary period.... If the service of the probationary employee is unsatisfactory, the employee may be removed or reduced at any time during the probationary period after completion of sixty-days or one-half of the probationary period, whichever is greater." [13] Similarly, the Dayton City Charter provides that an appointment to the classified civil service is not complete until the period of probation has elapsed. It also provides that a probationer may be discharged at any time during his term of probation. (Dayton City Charter § 99, attached to Doc. # 1, at Exh. 3). Likewise, the collective bargaining agreement between the City and the Fraternal Order of Police states that, during their nine-month probationary period, new police officers "may be disciplined, reprimanded, suspended, terminated, or

relieved of duty, without a showing of just cause." (Collective Bargaining Agreement § 5, attached to Doc. # 1, at Exh. 4).

In light of the foregoing provisions, the Court concludes that the Plaintiff, as a *probationary,* classified civil service employee, did not possess a property interest in continued employment as a police officer. Such a conclusion is consistent with post-*Loudermill* Ohio law and prior rulings of this Court. *See, e.g., Taylor v. City of Middletown,* 58 Ohio App.3d 88, 568 N.E.2d 745 (1989) (probationary, classified civil service employee had no property interest in his job); *Jacomin v. City of Cleveland,* 70 Ohio App.3d 163, 590 N.E.2d 846 (1990) (same); *Atkinson v. City of Dayton,* C–3–97–301 (S.D.Ohio 1998) (Rice, J.) (same); *see also Vander Wyden v. Cleveland Psychiatric Institute,* No. 42482, 1982 WL 2368 (Feb. 25, 1982), citing *Walton v. Montgomery County Welfare Dept.,* 69 Ohio St.2d 58, 430 N.E.2d 930 (1982).[14] Given that the Plaintiff lacked a property interest in continued employment with the City, he cannot state a claim for a violation of his due process rights. *Staffney v. Allen,* 187 F.3d 638, 1999 WL 617967 (6th Cir.1999) ("Either a liberty interest or a property right must be implicated in order to state a claim for a denial of procedural due process."); *see also Olim v. Wakinekona,* 461 U.S. 238, 250, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.").

Despite this conclusion, the Court will overrule the City's Motion to Dismiss

---

**13.** In the present case, the Plaintiff *was* removed during his probationary period and after the completion of at least one-half of said period.

**14.** In *Vander Wyden,* the Ohio Eighth District Court of Appeals reasoned:
 ... Admittedly, R.C. 124.34 affords *permanent* employees in the classified civil service a legitimate claim of entitlement to continued employment, absent one of the causes for reduction, suspension, or remov-

al enumerated therein. However, R.C. 124.27, which permits second-half probationary employees to be removed at the appointing authority's discretion and which provides that "no appointment or promotion is final until the appointee has satisfactorily served his probationary period," *does not afford probationary employees in the classified civil service that same claim.* (Emphasis added).

## 856

(Doc. # 5). As set forth, *supra*, the Court has assumed, *only for purposes of its analysis herein*, that the Plaintiff was properly subjected to the nine-month probationary period contained in the collective bargaining agreement, given the Court's finding that the nine-month term superseded the six-month term contained in the Dayton City Charter. If that assumption is a correct one, and the Plaintiff has not argued otherwise,[15] then he lacked a property interest in continued employment with the City for the reasons set forth more fully above. As explained, *supra*, however, the Court has serious questions about whether the nine-month probationary period may be applied to the Plaintiff, because his term of probation appears to have expired *before* the City and the Fraternal Order of Police entered into the collective bargaining agreement which contained the nine-month term.

Given that the parties have not raised or briefed this argument, the Court will overrule the City's Motion to Dismiss (Doc. # 5), despite its rejection, *supra*, of the specific argument set forth in the Plaintiff's Memorandum in Opposition (Doc. # 7). The Plaintiff is hereby granted leave to file a Motion for Summary Judgment, addressing the propriety of retroactively applying a collective bargaining agreement provision to extend the term of an employee's probation *after* said term has expired under the applicable City Charter provision. Said Motion must be filed within thirty (30) days from date.

### IV. *Conclusion*

Based on the reasoning and citation of authority set forth above, the Defendant's Motion to Dismiss (Doc. # 5) is hereby overruled. The Plaintiff is granted leave to file a Motion for Summary Judgment, addressing the specific issue raised herein, to wit: the retroactive extension of his

term of probation, within thirty (30) days from date.

---

15. The Plaintiff argues only that the nine-month term contained in the collective bargaining agreement does not supersede the shorter term found in the Dayton City Charter. He makes no argument that the nine-month term cannot be applied to him if it does supersede the City Charter.